PEOPLE v. JAMES

PEOPLE v. BULLARD

1. ARREST—PROBABLE CAUSE—FAILURE TO PRODUCE DRIVER'S LICENSE.
   Police officer had reasonable cause to arrest the defendant, stopped for speeding, for violating the motor vehicle code where the defendant failed to produce a valid Michigan driver's license, the defendant had produced a Michigan vehicle registration certificate for his car which had Michigan plates, the defendant had an Alabama driver's license, had admitted that he resided and was employed in Michigan, and it was the usual procedure of the local police to issue a summons for driving without a valid driver's license at the police station rather than on the street.

2. ARREST—PROBABLE CAUSE—CONCEALED WEAPONS—PLAIN VIEW.
   Police officers had reasonable cause to believe that a concealed weapon was being carried in violation of law and were justified in arresting the defendant driver of an automobile, where the police observed a gun in plain view in the cabin of defendant's automobile when the defendant emerged from the car after the defendant had been validly arrested for driving without a Michigan driver's license.

3. SEARCHES AND SEIZURES—ILLEGAL SEARCH.
   A shotgun seized without a warrant from the trunk of defendants' car was inadmissible in defendants' trial for armed robbery where the search was made shortly after one of the defendants had been arrested for driving without a valid Michigan driver's license and both defendants had been arrested for carrying concealed weapons, and the police did not, at

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 5 Am Jur 2d, Automobiles and Highway Traffic § 43.
[4] 53 Am Jur, Trial § 482 et seq.
[5] 29 Am Jur 2d, Evidence §§ 425, 426.
[6–8] 58 Am Jur, Witnesses § 754.

the time of the arrests, have any knowledge of a connection between the defendants and the robbery, because the defendants were effectively in custody and could not possibly reach any weapon in the trunk, and there was no reason to believe that fruits of either offense for which the defendants had been arrested would be found in the trunk.

4. CRIMINAL LAW—EVIDENCE—ITEMS EXHIBITED TO JURY—FAILURE TO INTRODUCE.

Evidence exhibited to the jury in a criminal case but not offered or introduced is to all intents and purposes considered as evidence.

5. SEARCHES AND SEIZURES—EVIDENCE—MOTION TO SUPPRESS—DISCRETION.

A motion to suppress evidence known to have been seized must be made before trial; however, the trial judge may waive this requirement and allow a belated motion.

6. WITNESSES—IMPEACHMENT—PRIOR ARRESTS.

A witness's testimony may not be collaterally impeached by questioning him about prior arrests which did not result in convictions.

7. EVIDENCE—PRIOR ARREST—PROBATIVE VALUE.

The fact that a person has been arrested is legally without probative value.

8. CRIMINAL LAW—WITNESSES—IMPEACHMENT—PRIOR ARRESTS.

Prosecutor's questioning, for impeachment purposes, one of the defendants' alibi witnesses concerning an arrest without showing that the arrest resulted in conviction constituted reversible error where the issue of guilt or innocence turned on the jury's appraisal of the competing testimony of the prosecution's eyewitnesses and the defense's two alibi witnesses.

Appeal from Recorder's Court of Detroit, Robert L. Evans, J. Submitted Division 1 June 9, 1971, at Detroit. (Docket Nos. 9475, 9499.) Decided October 26, 1971.

Joseph M. James and Johnny Bullard were convicted of armed robbery. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*D. Michael Kratchman,* for defendant James on appeal.

*Abba I. Friedman,* for defendant Bullard on appeal.

Before: Levin, P. J., and Quinn and V. J. Brennan, JJ.

Levin, P. J. Defendants Joseph Murphy James and Johnny Bullard were convicted of robbery armed.[1]

The robbery occurred at a bar in the City of Detroit at approximately 12:30 a.m. on December 7, 1968. Three eyewitnesses identified either one or both of the defendants as two of the men involved in the robbery. The defense presented two alibi witnesses who testified that the defendants were at a gas station having their automobile repaired at the time the robbery was committed.

## I.

The first issue concerns the introduction into evidence of two handguns found in the cabin of the defendants' automobile when they were arrested. A police officer testified that the automobile was stopped for speeding within an hour after the robbery was committed. At the time the police were unaware of the robbery. The driver, defendant

---

[1] MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

James, produced an Alabama driver's license and a Michigan registration for his automobile which had Michigan license plates.

The police officer testified that James was asked to alight from the automobile and was placed under arrest for driving without a Michigan driver's license after he admitted during questioning at the scene that he resided at a Michigan address and was employed in this state. As James alighted, the officer said he observed a handgun on the floor near James' seat. The other passengers, one of whom was defendant Bullard, were ordered out of the vehicle and the second handgun was found in the cabin.

The police officer acted within his authority in arresting James. The officer had reasonable cause to believe that James' failure to produce a Michigan driver's license was a violation of the Motor Vehicle Code.[2] The officer testified that it is the usual procedure to issue a summons for driving without a valid license at a police station rather than on the street. His testimony is consistent with our understanding of the practice of the Detroit police in that regard. We could not rightly say on this record that the declared reason for stopping the defendants' vehicle or for James' arrest was not the real reason.[3]

---

[2] MCLA § 257.301 (Stat Ann 1968 Rev § 9.2001); MCLA § 257.302 (Stat Ann 1971 Cum Supp § 9.2002).

[3] *Cf. People* v. *Marshall* (1970), 25 Mich App 376, 380; *People* v. *Lee* (1963), 371 Mich 563, 567.

Our case is similar to *People* v. *Kuntze* (1963), 371 Mich 419, 424, where our Supreme Court observed:

"We may note, parenthetically, that defendants make no claim, such as was made in *People* v. *Roache* [1927], 237 Mich 215; *People* v. *Anders* (1959), 167 Cal App 2d 65 (333 P2d 854); *Johnson* v. *State* (1950), 92 Okla Cr 63 (220 P2d 469), that the officers stopped them for a motor vehicle code violation merely as a pretext to afford the officers an opportunity to search defendants or their car. The only evidence received on the motion to suppress was the

When James emerged from the automobile and a gun was spotted in plain view,[4] the officers had reasonable cause to believe that a concealed weapon was being carried in violation of law[5] and were justified in making an arrest on that ground without a warrant.[6] The subsequent search of defendants and of the cabin of the automobile was a reasonable incident of lawful arrests.[7]

The defendants make two additional claims of error in relation to the admission in evidence of the two handguns. They claim that the guns were not connected to the robbery. In our opinion, however, the evidence of possession, one hour after the commission of the robbery, of guns which might have been used to commit it, had a logical and rational connection to the other evidence presented by the prosecutor.[8]

The defendants also contend that James' trial lawyer made a serious error in not having him testify at the hearing on the admissibilty of the seized evidence concerning his version of the facts at the time the defendants were stopped and arrested. We have no way of knowing why the lawyer failed to call James; perhaps James had made state-

officers' testimony and from that the trial judge was entitled to find, as he did, that defendants were stopped legally for a traffic violation."

[4] *People* v. *Tisi* (1970), 384 Mich 214, 221; *Harris* v. *United States* (1968), 390 US 234, 236 (88 S Ct 992, 19 L Ed 2d 1067).

[5] See MCLA § 750.227 (Stat Ann 1962 Rev § 28.424).

[6] MCLA § 764.15 (Stat Ann 1954 Rev § 28.874); *People* v. *Licavoli* (1928), 245 Mich 202.

[7] See *Chambers* v. *Maroney* (1970), 399 US 42, 48 (90 S Ct 1975, 26 L Ed 2d 419, 426); *Carroll* v. *United States* (1925), 267 US 132 (45 S Ct 280, 69 L Ed 543).

[8] See *People* v. *Hall* (1969), 19 Mich App 95, 106, fn 6. The trial judge's discretion to exclude evidence otherwise admissible because its probative value is overcome by the danger that introduction of the evidence will confuse, mislead, or prejudice the jury was not invoked in this case.

ments to his lawyer inconsistent with the claim now advanced. In this connection, we recently observed:

"A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately." *People* v. *Jelks* (1971), 33 Mich App 425.

## II.

Shortly after the arrest of the defendants, the police searched the trunk of the automobile without a warrant and found a shotgun. Ultimately the trial judge ruled that the shotgun was inadmissible; we agree with that ruling. When the defendants were arrested the police were unaware of their possible connection with the robbery. There was no reason to believe that fruits of the driving without a license or concealed weapons offenses or evidence tending to establish those offenses would be found in the trunk. There was no need to search the trunk for weapons as the men were effectively in custody and could not possibly reach any weapons in the trunk.[9]

---

[9] See *People* v. *Marshall, supra; People* v. *Gonzales* (1959), 356 Mich 247; *People* v. *Trudeau* (1971), 385 Mich 276. In this case, after stopping the defendants' automobile, the police drove it to the stationhouse. There they opened the trunk and found a shotgun and a .22-caliber pistol inside separate suitcases. No search warrant had been obtained. Neither at the scene of the arrest nor at the time of the search did the police have probable cause to believe that evidence or fruits of the traffic or concealed weapon offenses was contained in the trunk of the automobile. See *Preston* v. *United States* (1964), 376 US 364 (84 S Ct 881, 11 L Ed 2d 777); *Chambers* v. *Maroney, supra; Coolidge* v. *New Hampshire* (1971), 403 US 443 (91 S Ct 2022, 29 L Ed 2d 564).

The defendants contend that they were prejudiced by the judge's postponement of an evidentiary hearing on the admissibility of the shotgun until after it was identified before the jury.

The shotgun was displayed on the prosecutor's table during the first two days of the four-day trial. During this period a witness identified the shotgun as looking like one of the guns used in the robbery. No objection was made to his identification or to the placing of the gun on the table during these first two days. At the beginning of the third day, defense counsel asked that the prosecutor not be allowed to display this gun before the jury, and the prosecutor then put the gun under his table.

At the close of the third day, the judge conducted a separate hearing on the admissibility of the seized evidence and it was then that he ruled that the seizure of the shotgun was the product of an illegal search and hence inadmissible. In his instructions to the jury, the judge cautioned that "in no circumstance should you consider the sawed-off shotgun as evidence in this case".

The rule in this state is that "evidence exhibited to the jury but not offered or introduced is to all intents and purposes considered as evidence".[10]

While a motion to suppress evidence known to have been seized must be made before trial, the judge may waive this requirement and allow a belated motion.[11] It appears that it has become the frequently followed practice in the Recorder's Court of the City of Detroit to allow the motion to be made at the outset of the trial and sometimes for the court to defer consideration of the motion until a propi-

---

[10] *People* v. *Brisco* (1968), 15 Mich App 428, 429, citing *People* v. *Rozewicz* (1924), 228 Mich 231. Similarly, see *Gale* v. *People* (1872), 26 Mich 157.

[11] *People* v. *Ferguson* (1965), 376 Mich 90.

tious time during the course of the trial. This may
have the advantage of avoiding some duplication in
the hearing of evidence but exposes the defendant to
the risk of prejudice resulting from the jury learn-
ing about illegally obtained evidence before it is
effectively suppressed.

We need not comment on the practice followed in
this case, but if it is followed it is incumbent on the
prosecutor and the judge to prevent reference to or
exhibition before the jury of evidence that may be
suppressed until after the judge rules on the sup-
pression motion.

## III.

The remaining assignment of error concerns the
prosecutor's cross-examination of a defense alibi
witness. This witness was one of two persons who
testified that the defendants were at a gas station
at the time the robbery occurred.

On cross-examination, the prosecutor did not es-
tablish any former relationship between the alibi
witnesses and the defendants. The prosecutor then
asked one of the witnesses whether he had ever been
arrested. Defense counsel objected, and the jury
was excused. A discussion followed and the judge
said that he would "make a determination as to the
appropriate cautionary instructions" when he gave
the general instructions at the close of the case, but
no instructions were given.[12] Defense counsel was
allowed to meet the prosecutor's cross-examination
by going into the details of the arrests and showing
that they did not result in convictions.[13]

The extent of the allowable cross-examination of
a witness on collateral matters, for the purpose of

---

[12] In *Cachola* v. *The Kroger Company* (1971), 32 Mich App 557,
discussed *infra,* we said that the prejudicial effect of such evidence
could not be overcome by a cautionary instruction.
[13] See *People* v. *Greenway* (1962), 365 Mich 547, 550.

impeaching his credibility, is a matter confided to the discretion of the trial judge. To that general rule there is a significant exception: a witness may not be examined concerning an arrest that did not result in conviction.

The exception limiting cross-examination concerning prior criminal record to convictions is recognized by the great weight of authority.[14] We are convinced that the law of this state is in accord.

The people cite no decision of our Supreme Court or of our Court in a criminal case affirming a conviction where the credibility of a witness called by the defendant was impeached by reference to an arrest which did not result in the witness's conviction. It appears upon examination of the cases cited to us and from our own research that the statements that a witness may be questioned about arrests were either *dictum*[15] or made in cases factually distinguishable.[16]

---

[14] See Anno: Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution, 20 ALR 2d 1421, 1425:

"The rule prevailing in most jurisdictions and supported by the great weight of authority, subject to certain limitations, conditions, and exceptions hereinafter noted, is that it is not permissible to show that a witness has been arrested, or that he has been charged with or prosecuted for a criminal offense, or confined in prison, or to inquire as to such fact upon cross-examination, where no conviction is shown, for the purpose of impairing his credibility."

[15] The statement in *People* v. *MacCullough* (1937), 281 Mich 15, 27, that "one may be asked if he has been charged with crime" is taken from *Hamilton* v. *People* (1874), 29 Mich 173, 183, where the Court stated that a witness may be "asked if he had been charged with crime".

The briefs filed in *MacCullough* were 278 printed pages in length; it does not appear that the prosecutor questioned any witness concerning his arrest or conviction record or that any issue on that account was raised by the defendant or briefed on appeal in the Supreme Court. The above-quoted statement in *MacCullough*, set forth in the midst of an extended survey of earlier case law, was not germane to any issue in that case. *Hamilton*, likewise, is a lengthy opinion concerning multitudinous assignments of error. *Hamilton's* conviction was reversed because of a number of errors during his trial. Thus, the statement in *Hamilton* was not necessary to decision.

[16] The Court's statement in *Driscoll* v. *People* (1882), 47 Mich 413, is also based on *Hamilton* v. *People, supra,* and is also *dictum:*

In *People* v. *Brocato* (1969), 17 Mich App 277, we concluded, despite earlier statements and holdings by our Supreme Court,[17] that the credibility of a defendant in a criminal case who testifies in his own behalf may not be impeached by an arrest which did not result in conviction. We observe:

"Where credibility is the only issue, the probative value of arrests and charges, unsubstantiated by a conviction, is slight at best. When weighed against the great danger that the jury, despite careful instructions, might misapply such evidence, the scales of justice tip in favor of exclusion."

The reasoning of our Court in *Brocato* applies with equal force in the case of a witness who is not a defendant; a distinction in this regard between the defendant and one of his witnesses cannot reasonably be drawn. Since the trier of fact is more likely to credit the testimony of disinterested third persons than the testimony of a keenly interested defendant, the defendant in many cases will be more

the defendant was allowed to cross-examine the complaining witness and the Court's statement was in connection with general observations concerning the extent to which *additional* testimony or evidence concerning collateral matter offered to impeach credibility should be allowed.

The remaining cases are civil cases and, thus, cases where personal liberty was not at stake. See, *e.g.*, *Totten* v. *Totten* (1912), 172 Mich 565; *Jacobs* v. *Queen Insurance Company of America* (1917), 195 Mich 18; *Bay State Milling Co.* v. *Saginaw Baking Co.* (1923), 225 Mich 557. A *contra* civil case is *Dickinson and Hodges* v. *Dustin* (1870), 21 Mich 561, where the Court limited questions to previous criminal punishment or conviction; similarly, see *Cachola* v. *The Kroger Company, supra,* fn 12.

In *People* v. *Shugar* (1970), 29 Mich App 139, 143, and *People* v. *Haugabook* (1970), 23 Mich App 356, 359, we affirmed convictions in cases where the trial judge did not permit inquiry into a witness's arrest record for impeachment purposes. This indicates recognition on the part of trial judges of the impolicy of this line of inquiry; in this very case the judge indicated his doubt about this line of inquiry but by then the damage had been done.

[17] See *People* v. *Foote* (1892), 93 Mich 38, 40; *People* v. *Nixon* (1928), 243 Mich 630, 631; *People* v. *Statkiewicz* (1929), 247 Mich 260, 267.

dependent on the evidence offered by others than on his own testimony.

Recently, in *Cachola* v. *The Kroger Company* (1971), 32 Mich App 557, *leave to appeal denied* 385 Mich 775, we held that it is reversible error to cross-examine an opponent's witness concerning an arrest which did not result in conviction. In that case, an action for personal injuries suffered in one of the defendant's supermarkets, we granted a new trial because the defendant's lawyer asked one of the plaintiff's medical expert witnesses whether he was not under indictment for failing to report taxable income. We observed:

"This Court continues to have appeals wherein attorneys have deliberately attempted to introduce inadmissible evidence and ask objectionable questions for the calculated purpose of prejudicing the other party's right to a fair trial. The practice should stop. Attorneys who attempt such tactics should realize they risk a reversal."

The fact that a person has been arrested is legally without probative value; both the presumption of innocence and the need to preserve the integrity of the fact-finding process require that conclusion:

"Arrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." *Michelson* v. *United States* (1948), 355 US 469, 482 (69 S Ct 213, 93 L Ed 168).

We could not properly declare a belief beyond a reasonable doubt[18] that the evidence that one of the defendants' alibi witnesses had been arrested did

---

[18] *People* v. *Liggett* (1967), 378 Mich 706, 717.

not contribute to the jury's verdict. The prosecutor offered the arrest-without-conviction evidence to undermine the credibility of one of the defendants' alibi witnesses. Having accomplished his purpose, he may not now be heard to say that the alibi witness's credibility was not adversely affected in the jury's eyes by the impeaching testimony.

The issue of the guilt or innocence of the defendants turned on the jury's appraisal of the competing testimony of the eyewitnesses offered by the people and of the two alibi witnesses offered by the defendants. It is beyond our province to say that the jury might not have chosen to credit the testimony of the alibi witnesses but for the impeaching evidence.

Reversed and remanded for a new trial.

All concurred.