PEOPLE v MACKLIN

PEOPLE v CHIPMAN

1. CRIMINAL LAW—JOINT TRIAL—EVIDENCE—CONFESSIONS.

   It is accepted procedure in joint trials, involving codefendants, to allow a prosecutor to introduce a lawfully acquired confession of one of the defendants, provided any reference to one of the other defendants is deleted.

2. CRIMINAL LAW—JOINT TRIAL—EVIDENCE—CONFESSIONS.

   A defendant being tried jointly with a codefendant does not, in the absence of a showing of prejudice, have a right to have his whole confession introduced when portions of the confession also implicate the nonconfessing codefendant.

3. CRIMINAL LAW—EVIDENCE—CONFESSIONS.

   The Court of Appeals, in the absence of a showing of prejudice, cannot predicate reversible error upon the fact that the prosecutor introduced only a part of one codefendant's confession.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY.

   Alleged errors in the instructions to the jury in a criminal case have not been saved for appellate review, absent manifest injustice, where no objection was made to the instructions at the trial.

5. APPEAL AND ERROR—INSTRUCTIONS TO JURY.

   Instructions to the jury must be considered as a whole in reviewing alleged error.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 53 Am Jur, Trial §§ 59, 62.
[3] 29 Am Jur 2d, Evidence §§ 539–541.
[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[5] 5 Am Jur 2d, Appeal and Error § 894.
[6] 40 Am Jur 2d, Homicide §§ 246, 263–267, 439.
   Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.
[7] 40 Am Jur 2d, Homicide § 27 *et seq.*
[8] 46 Am Jur 2d, Judgments § 708 *et seq.*

6. Homicide—Murder—Deliberation—Premeditation.

> Deliberation and premeditation can be inferred from the character of the weapon used, the wounds inflicted, the circumstances surrounding the killing, the acts, conduct, and language of the accused before and after the killing, and the improbability of the story told by him (MCLA 750.316).

7. Homicide—Murder—Aiding and Abetting.

> Aiding and abetting in a murder was established where in the trial of two defendants the evidence showed that one actually did the shooting and killing and the other defendant participated in a planned escape with the principal, must have known that force, including the seizure of weapons, would have to be used, had by inference from his prior planning deliberated upon the possible necessity for use of a gun, initiated the plan of escape by jumping an officer, and fled the scene and remained in hiding with the principal (MCLA 750.316).

8. Criminal Law—Instructions to Jury.

> The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused (MCLA 768.29).

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 February 6, 1973, at Lansing. (Docket Nos. 12786, 12705.) Decided April 23, 1973.

Charles Macklin and James Chipman were convicted of first-degree murder and assault with intent to murder. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*Hayes & Kittendorf,* for defendant Macklin on appeal.

*Neithercut & Neithercut* (by *James C. Dillard),* for defendant Chipman on appeal.

Before: BRONSON, P. J., and FITZGERALD and O'HARA,* JJ.

FITZGERALD, J. On April 6, 1971, two Genesee County deputy sheriffs were assigned to take three county jail prisoners to a dentist's office in Flint for dental attention. Two of the prisoners were the defendants herein. At that office, during an escape attempt, one deputy was shot and died as a result thereof, and one deputy was seriously wounded.

Defendants were tried together and were convicted by a jury of first-degree murder[1] of one deputy, and of assault with intent to murder[2] another deputy.

The events which took place on April 6, 1971, are as follows:

Defendants Chipman and Macklin were inmates in the Genesee county jail awaiting trial on other charges. On the date in question, they were taken along with one Jesse Bailey to a dentist's office by deputies Harry Abbott and Ben Walker. While at the dentist's office, a scuffle between Chipman and Macklin and the two deputies occurred. Deputy Walker was shot and died as a result of the wound; Deputy Abbott was seriously wounded. After the shooting the defendants fled, but were subsequently apprehended.

The prosecution theory at the trial was that while Chipman and Macklin were in the jail, they formulated a plan to escape and that they were prepared to effectuate their plan, even if it meant taking a life.

This theory was attempted to be proved by the people by statements and admissions made by

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

[2] MCLA 750.83; MSA 28.278.

Macklin. The prosecution theory as to Chipman was that he was acting as an aider and abettor, that he was part of the escape plot, and that the actions and intent of his codefendant would be attributable to him.

Each defendant raises separate issues on appeal which will be dealt with *seriatim.*

Issues raised by defendant Macklin are:

1. Is defendant entitled to reversal of his conviction because the people introduced only that portion of defendant's confession which implicated him in the commission of the crimes charged?

2. Did the trial court commit error in its instructions to the jury? And if it did, can defendant raise objection for the first time on appeal?

Issues raised by defendant Chipman are:

1. Was the evidence introduced against defendant Chipman sufficient to support a conviction of murder in the first degree?

2. Did the trial court err in failing to instruct the jury that they were to consider the portion of codefendant Macklin's confession which was admitted into evidence against Macklin?

Defendant Macklin's first claim revolves around the confession. On April 6, 1971, Macklin gave police a 16 page statement of facts leading up to and bearing upon the crimes. Large portions of that statement implicated codefendant Chipman. At a pretrial *Walker* hearing, the statement of Macklin was ruled admissible at trial. Defendant Chipman subsequently moved for separate trials, contending that Macklin's statement would necessarily implicate him as forbidden by *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

The prosecution, at trial, introduced only a small part of defendant Macklin's statement:

"*Q. [Of the officer]:* I want to ask you: Pursuant to your duties on that date, did you have occasion to question a Charles Macklin concerning the events of that day?

"*A.* Yes, sir, I did.

"*Q.* Now, I want to direct your attention, Lieutenant, to that occasion and ask you where you were.

"*A.* In my office at the Detective Bureau of the Flint Police Department.

"*Q.* And who was present at that time?

"*A.* Excuse me. Detective Captain Victor Smith and Stenographer Loretta Morningstar.

"*Q.* All right. Now, I want to ask you if you advised Mr. Macklin of his rights.

"*A.* Yes, sir, I did.

"*Q.* Now, did you at that time question him concerning his activities prior to the shooting of Deputy Walker and Deputy Abbott?

"*A.* Yes, sir, I did. Yes, sir.

"*Q.* All right. Could you tell us what questions you asked him and what answers he gave to those questions?

"*A. I asked him—*

" '*Q.* Had you planned on making an escape before you left the jail this morning?'

"And his answer was, 'Yes.'

"My next question was:

" '*Q.* Was it planned to shoot the officers if you had to?'

"And his answer was:

" '*A.* You know, if that was the only way.'

"My next question was:

" '*Q.* Did you make any definite plan as to what you would do first, like get a mace can first?'

"His answer was:

" '*A.* Yes.'

"*Mr. Leonard:* Your witness.

"*Mrs. Eakin:* I have no questions.

"*Mr. Zielinski:* No questions, your Honor."

Defendant Macklin's attorney, prior to the ad-

mission of the confession as deleted, had complained to the court that the confession as abridged by the prosecution was prejudicial to Macklin. Macklin again moved for a separate trial. The court thereafter reviewed the confession as deleted and permitted the prosecution to introduce it in its deleted form.

It is accepted procedure in joint trials, involving codefendants, to allow a prosecutor to introduce a lawfully acquired confession of one of the defendants, provided any reference to one of the other codefendants is deleted. *People v Patton,* 15 Mich App 198 (1968); *People v Ronald Smith,* 27 Mich App 442 (1970).

Defendant Macklin claims however that the prosecutor, if he introduces a part of a confession, is under a duty to introduce the entire confession. In support of his contention that the prosecutor is under a duty, once he has introduced a part of a confession, to introduce the rest of it, defendant Macklin cites the cases of *People v Hepner,* 285 Mich 631 (1938) and *People v Roxborough,* 307 Mich 575 (1943). Both of these cases are distinguishable from the instant one, standing for the proposition that where the prosecution introduces only a part of a statement, the defendant is entitled to put the complete statement into evidence.

The foregoing cases were decided in the pre-*Bruton* period. In the instant case, the prosecution could not and did not introduce defendant Macklin's complete statement. Defendant's trial attorney, probably because of *Bruton,* did not urge the admission of the entire 16-page statement. Rather, her objection was to the effect that the confession, as deleted, should not be admitted at all because, as it stood, it was prejudicial to defendant Macklin.

In accordance with *Bruton,* a defendant being tried jointly with a codefendant does not, in the absence of a showing of prejudice, have a right to have his whole confession introduced when portions of said confession also implicate the nonconfessing codefendant. Such a ruling would comport with the spirit of *Bruton* and the procedure itself is proper as demonstrated in cases such as *Patton* and *Smith, supra.*

That a defendant, in urging this Court to reverse his conviction, must show how he was prejudiced by an alleged error, is well settled. *People v Calhoun,* 17 Mich App 401 (1969). Defendant Macklin makes the bare assertion that the failure of the prosecution to introduce the rest of his confession at trial is reversible error. He has not shown how he was prejudiced. Consequently, this Court cannot predicate reversible error upon the fact that the prosecution, in deference to *Bruton,* only introduced a part of defendant Macklin's confession.

Defendant Macklin contends as his second point, and for the first time on appeal, that the trial court committed error in its instructions to the jury because the judge allegedly overemphasized the phrase "lying in wait" and allegedly led the jury to believe that lying in wait to commit murder and lying in wait to escape were one and the same. This contention is without merit.

First of all, as the people correctly point out, the defendant did not object to this instruction at trial. Where no objection has been made to instructions, the alleged errors have not been saved for appellate review absent manifest injustice. *People v McKeller,* 30 Mich App 135 (1971). The instant case is not one in which the trial court failed to instruct upon an element of the offense. Defendant

contends that the trial court's instructions gave the jury the impression that lying in wait to commit murder (under the first-degree murder statute) and lying in wait to escape were one and the same crime. The speciousness of this claim is best exhibited by an examination of the allegedly defective part of the instructions:

"Now, let's discuss the matter of count one, the charge of murder. Murder is defined as where a person of sound memory and discretion willfully and unlawfully and unreasonably kills any creature as being against the peace of the State with malice aforethought, express or implied. Under the statute of this state, all murders which are perpetrated by means of poison or lying in wait or any other means of unlawful, deliberate, and premeditated killing, or which should be committed in the perpetration of certain offenses as defined by statute shall be deemed murder in the first degree. This is the statutory definition.

"All other murders are deemed to be murder in the second degree. If one without cause inflicts a wrong upon another, we call him wicked and malice. So when one, without any legal provocation, justification, or excuse intentionally kills another, he is called a murderer. The law implies from such unprovoked, unjustifiable, or inexcusable killing the existence of that wicked disposition which the law terms malice aforethought.

"Thus, if you determine one or both of the respondents intentionally killed Ben Walker without provocation, justification, or excuse, your verdict should be guilty of murder. The intention may be inferred from the use of the deadly weapon in such a manner that the death of the person assaulted would be the inevitable consequence.

"If you come to the conclusion that one or both of the defendants are guilty of murder, it is your duty to determine whether he is guilty of murder in the first or the second degree. Our statute provides, as I've stated, that all murders perpetrated by means of poison or lying in wait or any other unlawful or premeditated murder shall be murder in the first degree. In order to

convict the defendant or defendants of murder in the first degree, you must be satisfied that he intended to kill Ben Walker or, in terms of the statute as I've explained it to you, that the killing was willful, deliberate, and premeditated.

"It is not necessary that any particular time should have elapsed between the forming of the purpose and the intention to kill and the killing. If the defendant or defendants had, previous to the shooting of Ben Walker, determined to kill him and, to carry out their determination, willfully and deliberately killed him, he would be guilty of murder in the first degree. And I also again refer to the statutory definition that relates to lying in wait, and reference being made to unlawful, deliberate, and premeditated killing."

A reading of the foregoing excerpt reveals that the trial court did not overemphasize "lying in wait". The court in referring to the first-degree murder statute was explaining that statute and all of its terms as he had a right and duty to do.

Furthermore, defendant's contention that the instructions led the jury to believe that lying in wait to commit homicide and lying in wait to escape are the same is vitiated by the trial court's subsequent instructions on "lying in wait":

"All murder which is perpetrated by means of lying in wait is murder of the first degree. To constitute lying in wait as the term is used in these instructions, a person's conduct must involve an intent to take another person unawares so as to do him bodily injury and must include as a means to that end a waiting and a watching for an opportune time to do the act, and also either a concealment in ambush or some other secrecy of design to take the other person by surprise. That's lying in wait. Lying in wait, obviously, does not require any particular position of the body or that the designing person refrain from moving about or that he entice or trap the object of his design into a strange or puzzling situation or that the lying in wait continue for any

particular period of time, provided that its duration is such as to show a state of mind equivalent to premeditation and deliberation."

Clearly, the court was instructing the jury only as to lying in wait to commit murder. Defendant Macklin's contention pales when the instructions are considered as a whole, as they must be. *People v Iron,* 26 Mich App 235 (1970); *People v Elkins,* 39 Mich App 603 (1972). The jury was properly instructed. There was no error in this regard.

Defendant Chipman first challenges the sufficiency of the evidence adduced at trial to support his conviction of first-degree murder in the slaying of Deputy Ben Walker.

At trial, one Jesse Bailey, who was also an inmate in the jail, stated that Macklin informed him that he (Macklin) was "going to make his own way". Bailey and Macklin were subsequently joined by defendant Chipman. All three went to the "bullpen" to await transport to the dentist's office. Chipman was introduced to Bailey by Macklin who stated, "This is my partner". Bailey testified that Macklin and Chipman told him that if his name was called first, he was to lag back because they wanted to go out together. Macklin repeated the statement with Chipman present, "We're going to make our own way". Bailey testified that when Deputy Walker went over to take the handcuffs off, defendant Chipman jumped Deputy Walker. Chipman then started wrestling with Walker. Macklin proceeded to struggle with Deputy Abbott. Macklin succeeded in gaining control of a can of mace and sprayed Abbott and Bailey with it. Bailey ran from the room; Deputy Abbott followed him, gun in hand; Bailey heard a shot from inside the room, turned and saw defendant Macklin with

a gun in his hand. Bailey then saw Macklin shoot Deputy Abbott.

The testimony of Deputy Abbott with respect to the events surrounding the shooting was substantially the same as that of Bailey.

Both defendants fled together and were apprehended together. A gun was seized from each man.

Maurice Townsend, who had gone to the same office for treatment, testified that Chipman and Deputy Walker were struggling; that Macklin got the deputy's gun; that thereafter Chipman and Walker stopped struggling as Macklin had control of the gun; that he heard three shots and then heard Deputy Walker say "Oh, my God, not me".

It is clear that if defendant Chipman could be convicted of murder in the first degree, he must have been acting as an aider and abettor. All the evidence points to the fact that defendant Macklin was the one who actually shot and killed Deputy Walker.

The evidence establishes that defendant Chipman participated in a planned escape; that he must have known that force, including the seizure of weapons, would have to be used in order to effectuate the escape, and that this prior planning would be sufficient for the jury to infer that the defendants had deliberated upon the possible necessity for use of a gun. It was for the jury to decide whether or not the killing of Deputy Walker was within the scope of the illegal scheme entered into by Macklin and Chipman.

This is not a felony-murder case as enunciated in the statute. Defendants were escaping from custody, while awaiting trial, by the use of force and were therefore guilty of a felony.[3] However, since the crime was neither arson, rape, robbery,

---

[3] MCLA 750.197(c); MSA 28.394(3).

or burglary, it must affirmatively be shown by the prosecution that the killing was deliberate and premeditated. In *People v Griner,* 30 Mich App 612, 615 (1971), it was stated:

"Deliberation and premeditation can be inferred from the character of the weapon used, the wounds inflicted, the circumstances surrounding the killing, the acts, conduct, and language of the accused before and after the killing, and the improbability of the story told by him. *People v Wolf,* 95 Mich 625 (1893)."

The evidence adduced at trial would permit a jury to conclude that defendant Macklin was guilty of murder in the first degree. The testimony at trial placed Macklin with the deceased deputy's gun. Macklin was also observed (by witness Townsend) with the gun trained on Deputy Walker after defendant Chipman had subdued him. The cause of death of the deputy was shown to be a wound caused by a bullet from his own gun. This was sufficient circumstantial evidence to infer premeditation and deliberation as to defendant Macklin. The deputy was subdued. Macklin had the gun and time to reflect upon his actions.

With respect to the inference of premeditation and deliberation on the part of defendant Chipman, the following facts are relevant: (1) Chipman was a participant with Macklin in a plan of escape; (2) in an escape of this type, it is reasonable to assume that violence, including the seizure and use of weapons might be necessary; (3) Chipman initiated the plan of escape by "jumping" Deputy Walker; (4) Chipman fled the scene and remained in hiding with Macklin until subsequently apprehended.

The foregoing establishes that Chipman was an

aider and abettor in the first-degree murder of Deputy Walker.

Whether or not the first-degree murder of Deputy Walker was a "proximate consequence" of the joint plan of escape from custody was a question of fact for the jury. It was logical for the jury to conclude that an escape might necessitate the use of deadly force and that therefore defendant Chipman would be just as responsible for the first-degree murder of Deputy Walker as was defendant Macklin, the man who actually did the shooting.

Finally, the language of the Supreme Court of Illinois in *People v Smith,* 391 Ill 172, 180; 62 NE2d 669, 673 (1945), is enlightening:

"It is true that mere presence is not sufficient to constitute one a principal unless there is something in his conduct showing a design to encourage, incite, or in some manner aid, abet, or assist the assault. Of course, an innocent spectator is not criminally responsible because he happens to see another commit a crime, but if the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the same."

Defendant Chipman finally contends that since the trial court did permit the prosecution to introduce a small segment of defendant Macklin's confession into evidence, the trial court erred in failing to instruct the jury that they were to consider the confession only as evidence against Macklin and not against Chipman. This contention must fail for several reasons.

First, defendant Chipman never requested such an instruction and, in fact, indicated he was satis-

fied with the instructions as given. In *People v Wilson,* 40 Mich App 290, 293 (1972), it was stated:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused. MCLA 768.29; MSA 28.1052; *People v George Baker,* 7 Mich App 7, 11 (1967); *People v Anderson,* 13 Mich App 247 (1968). The failure by the defendant to request such instruction precludes a finding of reversible error on this issue."

Furthermore, the statement of Macklin which was received into evidence did not directly implicate codefendant Chipman. To repeat, the portion of Macklin's confession which the jury heard was:

"*Q.* Had you planned on making an escape before you left the jail this morning?
"*A.* Yes.
"*Q.* Was it planned to shoot the officers if you had to?
"*A.* You know, if that was the only way.
"*Q.* Did you make any definite plan as to what you would do first, like get a mace can first?
"*A.* Yes."

Defendant Chipman apparently claims that the reference to "plan" necessarily implicates him in the crime. This is not so. A "plan" is capable of being that of one person.

This question has been treated by this Court before. In *People v Patton,* 15 Mich App 198, 201 (1968), it was stated:

"Reversible error also is alleged by Forgash in the trial court's failure to instruct the jury that statements of Patton could not be used against Forgash and in its denial of Forgash's motion for a separate trial. Subsequent to trial of this cause, the United States Supreme Court held that the admission of a codefendant's statement implicating the defendant at a joint trial consti-

tutes prejudicial error as a violation of the right of confrontation. *Bruton v United States,* 391 US 123; 88 S Ct 1920; 20 L Ed 2d 476 (1968). However, the statement of Patton not being such as to implicate Forgash, no reversible error was committed in failing to instruct the jury to apply it only to Patton or in denying Forgash a separate trial. See *People v Schram,* 378 Mich 145 (1966)."

Also, in *People v Ronald Smith,* 27 Mich App 442, 444 (1970), it was held:

"Smith's statement did not inculpate the other co-defendants. The trial court properly made deletions in Smith's statement of all reference to the names of any codefendants. In fact, the statement does not show that there were any other persons involved in the commission of the crime and in no way served to implicate the other defendants. *People v Patton,* 15 Mich App 198, 201 (1968); *Bailey v United States* (CA 10, 1969) 410 F2d 1209; *United States v Gregg* (CA 7, 1969), 414 F2d 943."

The defendants' convictions of first-degree murder and assault with intent to commit murder are affirmed.

All concurred.