PEOPLE v BARGY

1. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—PREMEDITATION—DELIBERATION.

There is not sufficient evidence to support a first-degree murder conviction where the necessary elements of premeditation and deliberation are not present.

2. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—LETHAL WEAPONS.

The use of a lethal weapon alone is insufficient to support a conviction of first-degree murder.

3. HOMICIDE—FIRST-DEGREE MURDER—INTENT—PREMEDITATION—DELIBERATION.

Some time span between initial homicidal intent and ultimate action is necessary to establish the premeditation and deliberation required for a conviction of first-degree murder.

4. HOMICIDE—FIRST-DEGREE MURDER—EVIDENCE—PREMEDITATION—DELIBERATION.

Premeditation and deliberation, the necessary elements for a conviction of first-degree murder, are not present where there is no direct physical evidence linking a defendant to the crime and where, in a case where the victim was killed by the defendant's companion, defendant's statement indicates that he had no idea that his companion was armed or that a shooting might occur.

5. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—EXAMINATION OF RECORD—EVIDENCE—SUFFICIENCY.

The Court of Appeals must ascertain if there was sufficient

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 40 Am Jur 2d, Homicide § 44 *et seq.*

[4] 40 Am Jur 2d, Homicide § 454.

[5] 40 Am Jur 2d, Homicide § 425 *et seq.*

[6, 7, 9, 10] 75 Am Jur 2d, Trial § 724.

[8] 75 Am Jur 2d, Trial § 628.

[11] 81 Am Jur 2d, Witnesses § 587 *et seq.*

Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution. 20 ALR2d 1421.

evidence to establish second-degree murder in a case where there was an improper submission to the jury of a charge of first-degree murder.

6. Criminal Law—Aiding and Abetting—Principals—Accessory After the Fact—Statutes.

The liability of an aider and abettor is not distinguished from that of a principal; however, there is a distinction between a principal and an accessory after the fact; an accessory after the fact is one who, knowing that a felony has been committed, intentionally receives, relieves, comforts or assists the felon, or in any manner aids him to escape arrest or punishment (MCLA 767.39; MSA 28.979).

7. Criminal Law—Principals—Presence at Scene of Crime—Conduct.

Mere presence at the scene of a crime is insufficient to constitute one a principal unless there is something in his conduct showing a design to encourage, incite, or in some manner aid the commission of the crime.

8. Criminal Law—Instructions to Jury—Conflicting Instructions—Presumptions.

It may be presumed that a jury followed the instruction that was erroneous where conflicting instructions are given, one erroneous and the other without error.

9. Homicide—Instructions to Jury—Felony Murder—Premeditated Murder—Aiding and Abetting—Separate Offenses.

A jury instruction which injects felony murder principles into a premeditated murder trial is reversibly erroneous where it could have led the jury to believe that the defendant was liable for murder because he aided and abetted, not in premeditated murder, but in the commission of a separate offense not included in the original charge.

10. Homicide—Second-Degree Murder—Aiding and Abetting—Instructions to Jury.

A defendant may not be convicted of second-degree murder as an aider and abettor unless the jury, under proper instruction, can find the homicide was fairly within the scope of a common enterprise; a case in which the jury was not properly instructed must be remanded for determination by a properly instructed jury.

11. Criminal Law—Evidence—Prior Convictions—Impeachment.

Evidence on convictions obtained in violation of a defendant's

constitutional right to counsel may not be admitted for purposes of impeachment.

Appeal from Eaton, Willard L. Mikesell, J. Submitted June 1, 1976, at Grand Rapids. (Docket No. 23481.) Decided October 19, 1976.

Billy L. Bargy was convicted of first-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *David L. Smith,* Prosecuting Attorney, and *Chester S. Sugierski, Jr.,* Assistant Prosecuting Attorney, for the people.

*Leonard Esquina, Jr.,* Assistant State Appellate Defender, for defendant.

Before: R. J. DANHOF, C. J., and D. E. HOLBROOK and D. L. MUNRO,* JJ.

D. E. HOLBROOK, J. The instant case involves a first-degree premeditated murder[1] conviction of defendant Billie Lee Bargy. Defendant appeals as of right. The evidence linking defendant to this crime was largely circumstantial and included defendant's out-of-court in-custody statements, the truth of which were denied at trial, and inferences drawn therefrom. Unfortunately, there were no eyewitnesses and no direct physical evidence which linked anyone to the crime. Nevertheless, the jury was convinced and found defendant guilty.

On June 18, 1970, the partly unclad, decomposed body of Stanley Casey was discovered in rural Eaton County. The boy had been missing for several days. Approximately four years later, an Ea-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548.

ton County sheriff's detective was dispatched to Denver, Colorado, to interview defendant regarding the incident.[2] Defendant was interviewed several times, all after proper *Miranda*[3] warnings. Defendant was apparently in custody in Colorado on a separate offense. Finally, defendant gave a statement to the Michigan officer. Defendant stated that he and a second man had picked up the deceased who was hitchhiking. Defendant further indicated that he and the other man apparently talked the boy into engaging in some sexual activity. The other man and the boy allegedly were engaging in limited sexual activity when an argument ensued, the man produced a gun and the boy was killed. Defendant's statement indicated that he had no idea that the other man was armed and did not know a shooting might occur until after the fact. Defendant did indicate in the statement that he helped his companion remove the deceased's body and clothes from the automobile and the two men left the scene. The prosecution based its case on the truth of this statement and in his closing argument the prosecutor mentioned that this statement was "how things actually happened".

A summary of the evidence shows that the entire record consists of the following facts. First of all, the body and the already related circumstances of its condition. The prosecution then introduced defendant's in-custody statement which

---

[2] It appears that the police were tipped off by Keith Hamilton who was in custody on a sex-related charge in Michigan. Defendant's statement given in Denver while in custody was that defendant and Hamilton picked up the deceased while he was hitchhiking. The statement also alleged that Hamilton and the deceased were engaging in sexual activities when a dispute arose and Hamilton shot the deceased. Hamilton did not testify at the trial, although he apparently denied this to the authorities.

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

indicated that another man shot the deceased, although defendant was present. The third piece of evidence was a letter which defendant wrote purporting to relate a dream which defendant had. The dream related circumstances similar to those contained in defendant's other statement except that the dream indicated that the defendant and a teen-age boy were about to engage in sexual activities when the boy had a change of heart, produced a weapon and after a struggle the boy was accidently shot and killed.[4] There was no direct physical evidence linking defendant to this crime. Therefore, the jury was free to disregard defendant's statements which could have been inculpatory as to lesser degrees of homicide, but exculpatory as far as first-degree premeditated murder. There was no other evidence which could establish the element of premeditation necessary for a first-degree murder conviction.

The necessary elements of premeditation and deliberation are not present in the instant case. Use of a lethal weapon alone is insufficient. There must be shown to have been some time span between initial homicidal intent and ultimate action. *People v Hoffmeister,* 394 Mich 155, 161; 229 NW2d 305, 308 (1975). Therefore, in light of previous judicial guidance, we conclude there is no evidence to support a first-degree murder conviction. See, *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971), *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), and *People v Hoffmeister, supra.*

Having come to the conclusion that submission

---

[4] We are not sure this "dream letter" was admissible as proper impeachment. On retrial, the admissibility of the letter, as impeachment or as part of the prosecution's case in chief, will depend on the facts presented at trial. The trial judge may exclude relevant evidence if its probative value is outweighed by the risks of unfair prejudice, confusion of issues or misleading the jury. *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97, 100 (1973).

to the jury of first-degree murder was improper, we must decide the proper relief. In *People v Hoffmeister, supra,* the Court remanded for entry of judgment of conviction of a lesser included offense where the jury returned a verdict of guilty of the higher charged offense upon evidence sufficient only to prove the lesser offense. In *People v Vail, supra,* the case was remanded for retrial. We must examine the record to ascertain if there was sufficient evidence to establish second-degree murder.

Defendant's criminal liability was based on the theory that although he was not the actual principal, he aided and abetted in the commission of this homicide. The liability of an aider and abettor is not distinguished from that of a principal where the aider procured, counselled, aided and abetted in the commission of the crime. MCLA 767.39; MSA 28.979. Mere presence is insufficient to constitute one a principal, unless there is something in his conduct showing a design to encourage, incite, or in some manner aid the commission of the crime. *People v Macklin,* 46 Mich App 297, 309; 208 NW2d 62, 69 (1973), *People v Trudeau,* 51 Mich App 766; 216 NW2d 450 (1974), *cert den* 419 US 868; 95 S Ct 125; 42 L Ed 2d 106 (1974).

The instant case demands a discussion of the distinction between a principal and an accessory after the fact. Although we have not addressed the question recently, we must remind bench and bar that a distinction between a principal and an accessory after the fact remains. See, *Government of the Virgin Islands v Aquino,* 378 F2d 540 (CA 3, 1967).[5] See also, 40 Am Jur 2d, Homicide, § 32, p

---

[5] The Court in *Aquino* notes:

"This distinction survives the reason for the elimination of the distinction between principals in the first and second degree and accessories before the fact, for it rests upon a substantive difference in

324, which defines an accessory after the fact, at common law, as one "who, knowing that a felony has been committed, intentionally receives, relieves, comforts, or assists the felon, or in any manner aids him to escape arrest or punishment". After deliberations in the instant case had begun, the jury asked for an instruction clarifying the law. The request was as follows: "What is Michigan law relative to aid and abetting before, during *and after* the crime. Number two, redefine first degree, second degree murder and manslaughter." (Emphasis supplied.) The trial judge then gave the following instruction:

"As I previously told you in relationship to your request number one, the law of the State of Michigan is that there is no distinction between principal and accessory. That means there are no accessories for all legal purposes. They are all principals. The specific statute I read to you is [MCLA 767.39]; MSA 28.979 and that specifically states: 'Every person concerned in the commission of an offense whether directly commits the act constituting the offense or procures, councils *[sic]*, aids or abets in its commission may hereafter be prosecuted, indited *[sic]*, tried and on conviction, shall be punished as a principal. An accessory to crime may be convicted as a principal. One may not participate in a crime without being liable for the consequences. Where two or more persons combine to commit a felony and a murder is committed in furtherance thereof all parties to agreement to commit felony are liable for a murder although a homocide *[sic]* was not planned.' This is in relationship to the words accessory or accomplice. One who is associated with another in the commission of a crime, a

the nature of the criminal conduct involved. An accessory after the fact is one who, knowing that a crime has been committed, obstructs justice by giving comfort or assistance to the offender in order to hinder or prevent his apprehension or punishment. The offense thus can occur only after the substantive crime has been committed and is in no way an element of the crime." 378 F2d at 553. (Footnotes omitted.)
*See generally,* 22 CJS, Criminal Law, §§ 96–99, pp 275–279.

criminal offense, is called in law an accomplice. Sometimes they are called an accessory."

We feel this instruction was not sufficient to clearly apprise the jury of the task before it. First of all, the instruction did not answer the jury's question as to the liability of one who is "aiding and abetting after the fact". Secondly, this instruction injected felony murder principles into a premeditated murder trial. In the instant case, the prosecution based its case on defendant having aided and abetted the commission of homicide. Because of this instruction, the jury could have been led to believe that if defendant aided and abetted the commission of a separate crime, in this instance engaging in sexual activities with a 15-year-old boy, he was subject to liability for the resulting death. We cannot be sure the jury was not so confused. Where conflicting instructions are given, one erroneous and the other without error, it may be presumed that the jury followed the instruction that was erroneous. *People v Shelton,* 64 Mich App 154, 158; 235 NW2d 93, 95 (1975), *People v Eggleston,* 186 Mich 510; 152 NW 944 (1915). Therefore, we cannot enter judgment of conviction of second-degree murder. For defendant to have been found guilty, the jury must have been able to find that a homicide was fairly within the scope of the common enterprise. *People v Trudeau, supra,* at 772–773; 216 NW2d at 453. Compare, *People v Gordon,* 60 Mich App 412, 418; 231 NW2d 409, 412 (1975). We rule that a properly instructed jury, in this case, must determine whether the homicide was fairly within the scope of a common enterprise in which defendant participated or whether defendant was merely an accessory after the fact within the common-law definition and punishable according to MCLA 750.505;

MSA 28.773, a separate and distinct offense not necessarily included in the original charge. *Government of the Virgin Islands, supra,* at 554. This offense must be charged in a separate count.

Defendant also maintains that the threat of the use for impeachment purposes of convictions obtained in violation of *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), and *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972), affected the presentation of his defense. Because this case is to be reversed on other grounds, we need not consider this issue. *Loper v Beto,* 405 US 473; 92 S Ct 1014; 31 L Ed 2d 374 (1972), and *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974), have held that the use of convictions obtained in violation of *Gideon* and *Argersinger* for impeachment is improper. On remand defendant should be given an opportunity to show which convictions were improperly obtained and use of these convictions for any purpose must be denied.

We do not consider the remaining issues raised by defendant.

Reversed and remanded for a new trial.