PEOPLE v MORRIS

Docket No. 78-2731. Submitted March 7, 1979, at Lansing.—Decided
October 2, 1979. Leave to appeal applied for.

Joann Morris was convicted of first-degree murder, Saginaw
Circuit Court, Eugene Snow Huff, J. Defendant appeals, alleg-
ing error in the instructions to the jury, in the failure to
exclude certain evidence, and in certain cross-examination by
the prosecutor. *Held:*

1. The trial court gave an erroneous instruction to the jury
on the definition of legal sanity. The instruction was later given
correctly, but where conflicting instructions are given, one
erroneous and the other without error, the jury is presumed to
have followed the erroneous instruction.

2. The defense sought to exclude any reference to the fact
that the defendant had had legal abortions and had quarreled
with the victim over them prior to the homicide. The trial
court held that this evidence was admissible as being relevant
to the issue of the defendant's sanity. The abortions were not
shown to be relevant, and the evidence of them was more
prejudicial than probative. The defense motion to exclude the
references to the abortions should have been granted.

3. The prosecutor improperly asked the defendant on cross-
examination about certain prior arrests. Although evidence of
such arrests may be admitted as rebuttal to an insanity de-
fense, the defendant in this case had not yet presented such a
defense, and the question merely served as an improper at-
tempted impeachment of the defendant.

Reversed and remanded.

BASHARA, J., concurred, except that he would hold that the
question of the prosecutor regarding the defendant's prior
arrests was not, per se, reversible error. The prosecutor be-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 33-36, 38, 39.
   Modern status of the M'Naghten "right and wrong" test of criminal
   responsibility. 45 ALR2d 1447.
[2] 75 Am Jur 2d, Trial §§ 628, 920.
[3] 29 Am Jur 2d, Evidence §§ 249, 251-257.
[4, 5] 29 Am Jur 2d, Evidence §§ 320, 321.

lieved it to be permissible, an objection was sustained and the questioning did not continue. Judge BASHARA would hold the error, if any, to be harmless.

OPINION OF THE COURT

1. CRIMINAL LAW — INSANITY — LEGAL SANITY.

A criminal defendant is legally sane if he is shown to satisfy *both* of two requirements: (1) did he know that what he was doing was right or wrong, and (2) if so, did he have the power to resist the comtemplated action.

2. CRIMINAL LAW — INSTRUCTIONS TO JURY.

It may be presumed that a jury followed the erroneous instruction where conflicting instructions were given, one erroneous and the other without error.

3. HOMICIDE — EVIDENCE — RELEVANCE — PREJUDICE.

Reference to the fact that a defendant in a homicide case had had legal abortions and that the defendant and the victim had quarreled over the abortions was erroneously allowed to be admitted into evidence where the fact that she had had abortions was not shown to be relevant to the question of the defendant's sanity, which was at issue, and the reference to the abortions was potentially more prejudicial than probative.

4. CRIMINAL LAW — EVIDENCE — INSANITY — PRIOR ARRESTS.

Evidence of a defendant's prior arrests, convictions, and other antisocial conduct becomes material to the determination of the defendant's sanity once it is shown that such evidence is relevant to the formation of the opinion of the defendant's expert psychiatric witness; however, it was improper for a prosecutor to ask a defendant, on cross-examination, about previous arrests where the defendant's expert witness had not testified and the question, therefore, was not proper rebuttal to an insanity defense but an attempted impeachment of the defendant's credibility.

CONCURRENCE BY BASHARA, J.

5. CRIMINAL LAW — EVIDENCE — PRIOR ARRESTS — HARMLESS ERROR.

*A prosecutor's question to a defendant on cross-examination regarding previous arrests did not, per se, amount to reversible error because it was harmless error where the prosecutor believed the question was permissible to rebut an insanity defense, an objection to the question was sustained and there was no further questioning regarding the matter.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Patrick M. Meter,* Chief Assistant Prosecuting Attorney, for the people.

*Joseph Samuel Scorsone,* for defendant on appeal.

Before: M. F. CAVANAGH, P.J., and BASHARA and D. E. HOLBROOK, JR., JJ.

PER CURIAM. Defendant was tried by jury for the offense of first-degree murder. MCL 750.316; MSA 28.548. She was convicted, sentenced to life imprisonment and appeals by right, raising six issues, three of which merit comment and require reversal for a new trial.

Reversible error was committed when the trial court instructed the jury prior to their deliberations on the definition of legal insanity and the corresponding definition of legal sanity. The erroneous charge that was given twice was that, "The person is legally sane if despite the mental illness that person possesses substantial capacity *either* to appreciate the wrongfulness of her conduct *or* to conform her conduct to the requirements of the law". (Emphasis added.) In Michigan a criminal defendant is legally sane if she is shown to satisfy *both* of the two requirements, *viz.,* whether she knew what she was doing was right or wrong *and* if she did, then did she have the power to resist the contemplated action? *People v Martin,* 386 Mich 407, 418; 192 NW2d 215 (1971). The prosecutor argues that despite this improper charge, the jury was properly instructed before any proofs were presented and that a supplemental charge during deliberations stated the definition correctly

and resolved any possible ambiguities. Defense counsel objected to the predeliberation charge, noting the error; nevertheless, the trial court elected to "leave the instructions as they stand". Approximately three hours after commencing deliberations the jury requested another recital of the insanity instructions. At that time the charge was delivered correctly, however, the previous improper definition was not retracted. We have previously held that where conflicting instructions are given, one erroneous and the other without error, it may be presumed that the jury followed the instruction that was erroneous. *People v Bargy,* 71 Mich App 609, 616; 248 NW2d 636 (1976).

Another instance of reversible error concerned defendant's *in limine* motion to exclude any reference to the fact that defendant had had legal abortions prior to the charged crime. A report prepared by defendant's psychiatrist included the information that defendant and the victim had quarreled over the abortions, therefore, because the trial court felt that this information was relevant to the issue of defendant's sanity, the pretrial motion was denied. Defense counsel then offered to make a separate record to establish that the psychiatrist considered the abortions immaterial to his diagnosis. When the trial court refused that offer, defense counsel felt obliged to question all prospective jurors on voir dire about their attitudes concerning abortions, thereby effectively informing the jury of defendant's abortions. We find that these rulings by the trial court constituted an abuse of discretion. *People v Triplett,* 68 Mich App 531, 536; 243 NW2d 665 (1976), *lv den* 397 Mich 842 (1976).

MRE 401 and 402 define relevant evidence and direct that it be admissible except where otherwise

provided by constitution or court rule. The only possible relevancy the defendant's abortions may have had to the issue of her sanity is the strife which they may have occasioned between herself and her victim. If this were so, the abortions themselves would not be the relevant evidence. But more than this, it would have been a relatively easy matter for the trial court to determine whether or not the psychiatrist had relied upon the abortions in diagnosing defendant, in which case the abortions or the arguments generated by them would be relevant. Despite the possibility that this evidence was relevant, MRE 403 further requires that it be more probative than prejudicial. The existing strong and opposing attitudes concerning the issue of abortion clearly make any reference thereto potentially very prejudicial. In fact, one prospective juror at defendant's trial was peremptorily challenged, a challenge for cause having been denied, for having affirmed that she would "go into trial with the attitude that [defendant has] already committed a murder" by virtue of her abortions. Notwithstanding the deference with which a reviewing court must treat a lower court's determination of the admissibility of evidence, we find that a balance of the two factors weighs heavily towards prejudice with a minimum of probative value. *People v DerMartzex,* 390 Mich 410, 415; 213 NW2d 97 (1973).

Finally, error was also present when the prosecutor asked defendant on cross-examination: "Is it not a fact that in 1975 and 1976 you were arrested three times for shoplifting?" Counsel for defendant immediately objected and the trial court sustained the objection.

Once the question had been voiced, the potentiality for prejudice was present since it was com-

parable to evidence which was exhibited to the jury without its having been offered or received. *People v James,* 36 Mich App 550, 556; 194 NW2d 57 (1971). The prosecutor argued that *People v Woody,* 380 Mich 332, 335-339; 157 NW2d 201 (1968), allowed him to pose this question for the purpose of determining sanity after defendant had raised her insanity defense. *Woody* and subsequent cases in this Court which address that issue are clearly distinguishable from the present case on the basis that the prosecutors were permitted to rebut insanity defenses by such evidence only after the defendants' expert psychiatric witnesses had testified. The improper question in the present case was tendered before defendant's expert witness testified and was also directed to the defendant. The rationale behind the holding in the *Woody* case is that evidence of a defendant's prior arrests, convictions and other antisocial conduct becomes material to the determination of a defendant's sanity once it is shown that such evidence is relevant to the formation of the expert witness's opinion. *People v Hammack,* 63 Mich App 87, 93; 234 NW2d 415 (1975). Furthermore, the holding announced in *Woody* was stated to be controlled by a prior Supreme Court ruling that, "in general * * * as to a defendant who does not testify in his own behalf, evidence of former convictions or offenses is not admissible except in cases wherein such evidence is material and relevant to the issue being tried". *Woody, supra,* at 339. Thus, the prosecutor's question could not be seen as an attempt to impeach the diagnosis of the expert witness when the expert had yet to testify. Rather, the question must be seen as an attempted impeachment of defendant's credibility. As such, it was plainly improper. *People v Falkner,* 389 Mich 682, 695; 209 NW2d 193 (1973).

Reversed and remanded.

BASHARA, J. *(concurring)*. I concur in the result reached by the majority. However, it is my opinion that the prosecutor's question regarding prior arrests for shoplifting did not, per se, amount to reversible error. The question was propounded on cross-examination under the belief that it was permissible under *People v Woody,* 380 Mich 332; 157 NW2d 201 (1968). Once asked, an objection was sustained and the questioning ceased. Under the circumstances, the error, if any, was harmless.