PEOPLE v EDDINGTON

1. Criminal Law—Constitutional Law—Confrontation—Nonproduction of Evidence—Expert Testimony—Suppression.

   A good faith, unintentional nonproduction of physical evidence by the prosecution does not require suppression of expert testimony concerning the evidence not produced to preserve a defendant's right to confront adverse witnesses (US Const, Am VI; Const 1963, art 1, § 20).

2. Criminal Law—Constitutional Law—Due Process—Nonproduction of Evidence—Expert Testimony—Suppression.

   Due process and fundamental fairness did not require suppression of expert testimony offered by the prosecution concerning physical evidence which the prosecution was unable to locate and produce for defense examination where the prosecution made earnest efforts to locate the evidence and no intent to suppress for bad faith motives was shown.

3. Criminal Law—Constitutional Law—Compulsory Process—Nonproduction of Evidence.

   The prosecution's inability to locate and produce physical evidence for defense examination did not violate a defendant's rights to compulsory process to secure witnesses in his favor and to offer witnesses in his defense in that defendant's expert, unable to examine the evidence, would be precluded from fully and effectively testifying in his behalf, because the Sixth Amendment guarantee has not been extended to the quality of a witness's testimony, and because the defendant was not denied his right to place his expert on the stand, nor to have his voluntary, free testimony (US Const, Am VI; Const 1963, art 1, § 20; MCLA 763.1).

Appeal from Saginaw, Robert H. Campbell, J. Submitted Division 3 March 15, 1974, at Detroit. (Docket No. 17081.) Decided May 2, 1974.

Reference for Points in Headnotes

[1–3] 29 Am Jur 2d, Evidence § 178 et seq.

William H. Eddington was convicted of two counts of first-degree murder. Defendant appealed. Conviction reversed and remanded for new trial (387 Mich 551). Prior to retrial, defendant's motion to suppress evidence was granted. The people appeal by leave granted. Reversed and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. Brady Denton,* Prosecuting Attorney, for the people.

*James A. Brisbois,* for defendant.

Before: J. H. GILLIS, P. J., and QUINN and O'HARA,* JJ.

J. H. GILLIS, P. J. Prior to defendant's retrial mandated by *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972), defense counsel sought discovery of certain glass particles once imbedded in defendant's shoes which expert testimony at the first trial indicated matched certain broken backdoor glass in the murder victims' home. The prosecution agreed to produce the glass particles for defense examination. When they could not be located, defendant moved to suppress the prosecution's expert testimony. The trial judge granted that motion, unless the missing samples could be subsequently produced. He did not find an intentional loss, but ruled nevertheless that nonproduction violated defendant's constitutionally protected rights to confrontation[1] and due process of law.[2]

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] U S Const, Am VI; Const 1963, art 1, § 20.

[2] U S Const, Am XIV.

We granted the prosecutor leave to appeal to consider the significant questions raised.

Although the trial court opinion did not address the issue, defendant-appellee also contends that nonproduction of the samples infringes his right to compulsory process to obtain witnesses in his favor,[3] and his right to "produce witnesses and proofs in his favor",[4] since the defense expert's testimony will be less meaningful without the opportunity to examine the samples.

Michigan's increasingly progressive approach to criminal discovery has its foundation in the trial judge's inherent discretionary powers, rather than any statutory grant. *People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960); *People v Dellabonda,* 265 Mich 486; 251 NW 594 (1933); *People v Wimberly,* 384 Mich 62; 179 NW2d 623 (1970); *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973). *Wimberly, supra,* reaffirmed the prosecutor's duty to produce for defense examination at trial all evidence relevant to defendant's guilt or innocence. We conclude however that the trial judge abused that discretion in ordering suppression of the state's expert testimony.

I

Is defendant's right to confront adverse witnesses infringed by good-faith nonproduction of evidence?

Both the trial judge and defendant-appellee relied on *Johnson v Florida,* 249 So 2d 470 (Fla App, 1971), which the Florida Supreme Court later affirmed, *Johnson v Florida,* 280 So 2d 673 (1973).

---

[3] U S Const, Am VI; Const 1963, art 1, § 20.

[4] MCLA 763.1; MSA 28.854.

*Johnson, supra,* required production of hearsay sources upon which the prosecution's expert based his opinion. *Johnson, supra,* principally offered *United States v Williams,* 424 F2d 344 (CA 5, 1970), to support its confrontation analysis. However, *United States v Williams,* 447 F2d 1285 (CA 5 *en banc,* 1971), retracted the Fifth Circuit's prior view in light of *California v Green,* 399 US 149; 90 S Ct 1930; 26 L Ed 2d 489 (1970), finding that the opportunity to cross-examine the state's expert at trial satisfied the confrontation guarantee. The confrontation clause does not require production of the hearsay sources from which the expert drew his opinion. *Green, supra,* analyzes the guarantee:

" 'Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of the trial that forms the core of the values furthered by the Confrontation Clause * * * ' 399 US at 157; 90 S Ct at 1934 [–1935]; 26 L Ed 2d at 496.

" * * * [T]he Court quoted with approval from *Mattox v United States,* 156 US 237, 242–243; 15 S Ct 337, 339; 39 L Ed 409, 411 (1895):

" 'The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' " *United States v Williams, supra,* 1289.

*Green, supra,* makes it clear that the confrontation guarantee focuses upon "the right of the accused to confront and probe each of his accusers

—a narrow adversary activity".[5] *United States v Williams, supra,* 1289.

*Williams'* confrontation rationale is widely shared. In *United States v Sewar,* 468 F2d 236 (CA 9, 1972), a trial judge suppressed certain test results after learning that a lab technician inadvertently destroyed a blood sample which should have been preserved. Finding no violation of the confrontation guarantee, because the expert was available for cross-examination, the Court held the test results admissible even in the absence of a defense opportunity to make its own test.

"Not every blunder by investigators should result in the exclusion of relevant, competent, important evidence. While we would be naif to believe that no investigator would ever behave in the manner conjured up by the trial judge, we cannot administer justice upon the assumption that all or even most investigators will behave in that manner.

"This case is governed by *United States v Augenblick,* 393 US 348; 89 S Ct 528; 21 L Ed 2d 537 (1969). It involved the unexplained loss of a tape on which was recorded a conversation between the accused and an investigator. The tape had been unaccountably lost and so could not be used in cross-examining the investigator, who testified about the conversation. The conviction was by a military court, and the question was raised in a subsequent action for pay, in which Augenblick claimed that the conviction was constitutionally infirm. The Court of Claims held that the failure to produce the tape denied the accused due process of law. The Supreme Court reversed, in a unanimous opinion by Mr. Justice Douglas, in which he emphasized that the tapes were not suppressed, and held that the question was not one of constitutional dimension." *United States v Sewar, supra,* 237–238.

See also: *United States v Augello,* 451 F2d 1167

---

[5] *The Supreme Court, 1969 term,* 84 Harv L Rev 108, 112 (1970).

(CA 2, 1971) (deliberate destruction of "unintelligible" tape did not preclude police officer witnesses' testimony); *United States v Shafer,* 445 F2d 579 (CA 7, 1971); *United States v Musgrave,* 483 F2d 327 (CA 5, 1973).

In *United States v Love,* 482 F2d 213 (CA 5, 1973), tests performed ten days after the accused's arrest confirmed the presence of nitrate and dynamite traces on defendant at the time of arrest. However, the acetone swabs containing the samples were consumed in the testing process. Defendant claimed failure to summon the defense expert for testing denied him effective assistance of counsel in confronting the evidence. Even though defendant's expert should have been permitted to participate, the opportunity to probe the authenticity and accuracy of the expert's sources and reasoning process satisfies the confrontation guarantee.

Even *Augenblick, supra,* interpreting the Jencks Act, 18 USC 3500,[6] indicates that circumstances of evidence destruction are crucial in determining whether the sanction of exclusion attaches. A good-faith loss does not trigger exclusion, and does not even rise to the dignity of constitutional dimension.

In light of the persuasive, reliable authority to the contrary, we hold the trial judge abused his discretion in concluding that good-faith unintentional nonproduction of evidence requires suppression of expert testimony because defendant's right to confrontation is violated.

## II

Is suppression of expert testimony mandated by

---

[6] Plainly not applicable in Michigan.

defendant's rights to a fair trial and due process of law?

In *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the Supreme Court fashioned its current test of due process in the area of disclosure to the defendant.[7] That standard essentially turns on whether the evidence is material and favorable to the defendant, a standard articulated in Michigan 90 years ago. *People v Davis*, 52 Mich 569; 18 NW 362 (1884).

"[I]f there shall be in the possession of any of its officers information that can legitimately tend to overthrow the case made for the prosecution, or to show that it is unworthy of credence, the defense should be given the benefit of it." *People v Davis, supra,* 574, cited in *People v Aldridge, supra,* 645.

While hindsight eases appellate courts' judgments as to what is favorable evidence, neither prosecution, defense, nor trial judges are so blessed. Favorable evidence is elsewhere defined as all "evidence which * * * might have led the jury to entertain a reasonable doubt about * * * guilt". *Levin v Katzenbach*, 124 US App DC 158, 162; 363 F2d 287, 291 (1966). The test should be liberally construed especially when "substantial room for doubt" exists as to the effect disclosure might have. *United States v Bryant*, 142 US App DC 132, 138; 439 F2d 642, 648 (1971).

We might escape the problem completely by finding that the expert testimony at the original trial provides sufficient indicia to judge this evidence unfavorable. Yet, because these glass samples are highly relevant and important evidence, and because recently conducted tests of *other* glass

---

[7] *Moore v Illinois*, 408 US 786; 92 S Ct 2562; 33 L Ed 2d 706 (1972), simply applied and explained the *Brady* test in an unusual factual situation.

particles from defendant's shoes are not identical to samples from the victims' home, "substantial room for doubt" exists. The purpose of the constitutional duty to disclose, in addition to correcting an imbalance of advantage as to evidence chiefly in the state's custody, is to make the trial a search for truth informed by all relevant sources. Those values are furthered by disclosure. *United States v Bryant, supra,* 142 US App DC at 138; 439 F2d at 648.

Under ordinary conditions, this evidence would fall within the duty to disclose which due process imposes. However, absent a showing of bad faith, the due process clause does not require suppression of the expert's testimony. The government has the duty to preserve the evidence, and the burden to explain nonproduction; here, the burden was met. The prosecution made "earnest efforts" to locate the evidence. No intent to suppress for bad-faith motives was shown. The sanction of exclusion does not attach. *United States v Augenblick, supra; United States v Bryant, supra.* The trial court erred in ruling that due process and fundamental fairness required suppression of the proffered testimony.[8]

## III

Does nonproduction of the glass samples violate defendant's right to compulsory process and to present witnesses in his defense?

Finally, we turn to a consideration of the claim that defendant's right to compulsory process to secure witnesses in his favor,[9] and his right to offer

---

[8] *See also Commonwealth v Cromartie,* 222 Pa Super 278; 294 A2d 762 (1972), Judge Spaulding, concurring.

[9] U S Const, Am VI; Const 1963, art 1, § 20.

witnesses in his defense,[10] were violated because his expert, unable to examine the glass, would be precluded from fully and effectively testifying in his behalf. The argument is novel. We do not believe it expedient to expand the compulsory process guarantee to the extent defendant contemplates. *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967), first applied the Sixth Amendment compulsory process guarantee to the states.

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.

\* \* \*

"[T]he right to compulsory process was included in the Bill of Rights in reaction to the notorious common-law rule that in cases of treason or felony the accused was not allowed to introduce witnesses in his defense at all.

\* \* \*

"In light of the common-law history, and in view of the recognition \* \* \* that the Sixth Amendment was designed in part to make the testimony of a defendant's witnesses *admissible* on his behalf in court.

\* \* \*

"We hold that the petitioner \* \* \* was denied his right to compulsory process for obtaining witnesses in his favor because the State *arbitrarily denied* him the right *to put on the stand* a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense. The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no

---

[10] MCLA 763.1; MSA 28.854.

right to use." 388 US 14, 19, 22, 23; 87 S Ct 1920, 1923, 1925; 18 L Ed 2d 1019, 1023, 1025. (Emphasis supplied.)

Although *People v Pena,* 383 Mich 402; 175 NW2d 767 (1970), *inter alia,* recognizes that a prosecutor's intimidation of witnesses can invade the Sixth Amendment guarantee, we find no precedent which extends the guarantee to the realm defendant suggests. See also *Webb v Texas,* 409 US 95; 93 S Ct 351; 34 L Ed 2d 330 (1972). The Court opined that a trial judge's threatening remarks to the lone defense witness "effectively drove the witness off the stand". Citing *Washington v Texas, supra,* the Court concluded that the remarks interfered with the witness's free and voluntary choice whether to testify, thus depriving defendant of due process. The guarantee has not extended to the quality of the witness's testimony. Even assuming the guarantee applies, the remedy for compulsory process violation may be subsumed in applying the *Brady* due process test suggested supra. See *Webb v Texas, supra; United States v Jones,* 155 US App DC 129, 132; 476 F2d 885, 888 (1973) (Bazelon, J., dissenting). The state did not deny defendant his right to place his expert on the stand, nor to have his voluntary, free testimony. In any event, no violation of the test articulated above has been shown. The trial judge abused his discretion in concluding that constitutional guarantees required suppression of expert testimony.

Reversed and remanded for proceedings consistent with this opinion.

All concurred.