PEOPLE v BENDIX

1. CRIMINAL LAW—EVIDENCE—DISCLOSURE—TRIAL—VERDICT—NEW EVIDENCE.

   Criminal convictions will not be invalidated merely because a combing of the prosecutor's files after the trial may disclose evidence possibly useful to the defense but not likely to change the verdict.

2. CRIMINAL LAW—EVIDENCE—SUPPRESSION OF EVIDENCE—MATTERS EMBRACED.

   "Suppression of evidence" embraces destruction, negligent custody, and terms of similar import and where properly established it can vitiate a conviction which in all other respects is error free.

3. LARCENY—EVIDENCE—CUMULATIVE EVIDENCE—STOLEN GOODS—PAROL EVIDENCE.

   Production of the stolen goods in a trial for larceny is merely cumulative evidence where the nature, appearance and condition of the goods has been proved by parol evidence.

4. LARCENY—EVIDENCE—UNINTENTIONAL LOSS OF EVIDENCE—SUPPRESSION OF EVIDENCE.

   The unintentional loss of a box of goods and an alleged sales slip by the police or prosecution did not constitute suppression of evidence and was not reversible error in a trial for larceny where there was no showing of any intentional suppression of the evidence or negligence on the part of the prosecution, the trier of facts heard defendant's full claim concerning the bill of sale, the alleged sales slip, and the loss of such evidence; production of the items would have little or no effect on the totality of the evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 21 Am Jur 2d, Criminal Law § 225.
   Withholding or suppression of evidence by prosecution in criminal case as vitiating conviction. 34 ALR3d 16.

[3] 29 Am Jur 2d, Evidence §§ 289, 290.
   30 Am Jur 2d, Evidence § 1129.

Appeal from Oakland, Farrell E. Roberts, J. Submitted Division 2 January 8, 1975, at Lansing. (Docket No. 17135.) Decided February 10, 1975.

Judy Bendix was convicted of larceny in a building. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the people.

*Henry, Grubbs & Bledsoe,* for defendant.

Before: DANHOF, P. J., and McGREGOR and WALSH, JJ.

McGREGOR, J. A complaint and warrant charging defendant with the offense of larceny in a building, MCLA 750.360; MSA 28.592, were issued June 12, 1972. Counsel was obtained by her and she was bound over to the circuit court on July 5, 1972, having waived examination. Defendant was convicted on March 9, 1973, in a trial without a jury, and appeals as of right.

This Court is asked to reverse defendant's conviction, under defendant's contention that the failure of the prosecution to preserve evidence desired in defendant's defense and the subsequent failure to offer the goods alleged to have been stolen as evidence constitutes suppression of evidence, in violation of the due process of law.

Defendant's allegation of error raises an issue of considerable difficulty. The law regarding the suppression of evidence under circumstances similar to those existing in the case at bar appears to be infrequent and incomplete.

First witness for the prosecution was Sam Gat-

son, security officer for Cunningham's Drug Store.
Gatson testified that his attention was attracted to
a woman who seemed to be shopping, whom he
observed remove a fan from a box and then start
putting merchandise into the empty box. He could
not recall all the items placed in the box by the
defendant, but testified that they were something
like paper plates and kitchenware. The prosecu-
tion refreshed Gatson's memory with a copy of a
report which he had tendered immediately follow-
ing the incident; this report was not introduced
into evidence. Gatson went on to testify that, after
the defendant had placed the items in the box, she
left the store with the box, without paying for the
items, whereupon he followed and apprehended
her in the parking lot. After he identified himself
to the defendant, she dropped the box and began
to run; Gatson caught her and she accompanied
him back to the store. Gatson and one of the store
clerks retrieved the box and its contents and re-
turned it to the store. Defendant was questioned in
the back of the store; the police were summoned,
and both defendant and the box of merchandise
were removed.

One of the police officers, called to apprehend
the defendant on the day in question, testified that
Gatson informed him that the defendant was being
held for shoplifting, and that the officer then
placed her under arrest and questioned her. He
identified the defendant in court. Gatson further
testified that he surrendered a large fan box which
was full of merchandise to another officer, to be
used as evidence. The police officer testified as to
what he saw in the box on the day of arrest and
used a report formerly made by him to refresh his
memory, that the box was taken to the police
station, placed in the property locker, and had not
been seen by the police officer since.

Another police officer testified. His testimony was nearly the same as his partners', except that this officer testified that, upon checking the records of the property department, prior to trial, he discovered that the box and its contents had been released to someone named Hammel, apparently an employee of Cunningham Drug Stores. The prosecution then indicated that Hammel was not available to testify.

At this point, defense counsel moved to dismiss because of the failure of the prosecution to preserve and introduce at trial the evidence upon which the charge brought against her was premised, which motion the court denied.

Defendant testified in her own defense, substantially that she was in Cunningham's Drug Store for 30 minutes prior to the alleged incident, during which time she purchased items for a baby shower gift. Defendant then went to another store, found something she liked better, and returned to Cunningham's to return the items previously purchased. She also testified that she was going on a picnic, needed some barbecue items, and had advised the cashier that she did not want a cash refund because there were items she needed in exchange. She testified that she had taken the fan box, put the items previously described into it, that she showed each of the items to one of the store's clerks as she put it into the box, and that the clerk itemized them on the back of the sales slip. Defendant testified that this clerk was about seven feet away from her during this selection. Defendant further testified that she then took the sales slip from the clerk, put it into the box, picked up the box, and left. It may be noted that no reference was made to any sales slip at the time of the arrest. Defendant stated at trial that

she did not feel it was necessary to explain to the police because they knew her previous record and felt that they had a shoplifter.

The record indicates that Gatson, the store's security officer, and one of the store's clerks retrieved the box and its contents, which had spilled in the parking lot. Gatson returned these items to the store and wrote down in his report all the items which were in the box; he then initialed all the items and turned them over to the police. There is agreement that there had existed a box and contents and that a sales slip may have been among the contents.[1] There was no showing of intent deliberately to suppress the evidence on the part of the prosecution or that the alleged sales slip would have altered the trial result.

"[T]he problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result. To invalidate convictions in such cases because a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict would create unbearable burdens and uncertainties." *United States v Keogh,* 391 F2d 138, 148 (CA 2, 1968).

A similar problem was discussed by Judge (formerly Justice of the Michigan Supreme Court) O'HARA, in *People v Miller,* 51 Mich App 117, 118, 120–121; 214 NW2d 566 (1974). A key claimed by the defendant to have been taken from him by the police at the time of defendant's arrest was not offered in evidence. Justice O'HARA commented:

"The item said to have been suppressed is a key. It is relevant here because the defense was that he entered the building with a key he claims to have retained after

---

[1] Such inventory did not list any sales slip.

his employment by the owner of the building had been terminated. As bearing on his intent, he maintains he entered the building, in which a window had been smashed, in order to phone his former employer and inform him of the apparent break-in. The people claim the contrary.

\* \* \*

"We deem it advisable to note that we use the term 'suppression' in the general sense contemplated by case precedent and not in its strict literal sense. It embraces 'destruction', 'negligent custody', and terms of similar import.

"Suppression of evidence as above defined is a very serious charge. In the nature of things an accused is defenseless against it. Properly established it can vitiate a conviction which in all other respects is error free.

"Citations in support of these general principles do nothing but take up space.

"As those settled principles apply in this case they must rest on the record made and particularly on the testimony quoted herein.

"From that quoted testimony we conclude that the defense simply did not make out even a prima facie case of suppression as we have defined that term. At best we have a disputed—sharply disputed—question of whether the defendant had the key in question at all. He says he did. His employer says he asked for it back and the defendant asserted he lost it. We have the defendant's testimony that his attorney said 'no keys in the property box' and there the matter was dropped.

"It is important to uphold the principle that the state may not suppress evidence and by our holding here we do not dilute that principle by one cubic centimeter.

"It is quite another thing to say that the defense for its own purposes may simply suggest suppression and depend on that for appellate reversal. It is not the rule as we understand it that the prosecution is obligated to try the defendant's case."

The production of the stolen goods would have added nothing to the proofs already elicited at trial. Such production could not have increased or

decreased the evidence of defendant's guilt or innocence. The testimony at trial is undisputed: defendant placed certain paper plates and household goods in a box and left the store with them. The security officer for the store and the defendant agree as to those facts. The only question in dispute is whether or not the defendant stole those goods. Under the facts, there is no additional evidentiary value which could attach to the actual production of the box of goods.

The nature, appearance and condition of the goods was proved by parol evidence and the production of the goods themselves is merely cumulative. *Francis v United States,* 239 F2d 560, 562 (CA 10, 1956).

Defendant alleges that her defense is stifled because of the non-production of the box of goods; that she paid for the goods, had a sales slip for them with the itemized writing on the back; and that, since she put this alleged sales slip in the box, failure to produce the box prevents her from her proof. More precisely stated, defendant argues that non-production of the box prevents the prosecution from proving her guilt beyond a reasonable doubt.

In the case at bar there was no showing of any intentional suppression of the evidence by the police or the prosecution. The trier of the facts heard defendant's full claim concerning the bill of sale, the alleged sales slip, and the loss of such evidence. Production of such items would have little or no effect on the totality of the evidence. In the context of the facts presented, the unintentional loss of such well-described evidence did not constitute deliberate suppression of evidence, is not reversible error, and does not require overturning the conviction. The trier of the facts found

the defendant guilty. There was no showing of negligent failure on the part of the prosecution, as is indicated by *United States v Bryant,* 142 US App DC 132; 439 F2d 642 (1971).

Affirmed.