PEOPLE v TRIPLETT

1. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—
   AMENDED INFORMATION—REDUCTION OF CHARGE—PRELIMINARY
   EXAMINATION—WAIVER.

   A defense motion at trial that a new preliminary examination be
   held on grounds that defendant had just recently learned that
   the information had been amended from a charge of first-de-
   gree murder to one of second degree was properly denied where
   defense counsel had actively sought the reduction in the charge
   and the record reflected a waiver of any objection to the
   proposed amendment at the beginning of the trial.

2. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—IN-
   CLUDED OFFENSES—NOTICE TO ACCUSED.

   A charge of first-degree murder ipso facto apprises the accused
   that he must defend against the lesser included offense of
   second-degree murder as well.

3. SEARCHES AND SEIZURES—PLAIN VIEW—POLICE—EVIDENCE.

   Seizure of objects within the plain view of a police officer who is
   lawfully in a place where he has a right to be is not proscribed
   by the Federal or state constitutions, and objects so seized are
   therefore admissible in evidence (US Const, Am IV, Const 1963,
   art 1, § 11).

4. EVIDENCE—RELEVANCE—JUDGES—DISCRETION—APPELLATE RE-
   VIEW.

   The relevance of proffered evidence is a discretionary determina-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 185, 494.
[3] 68 Am Jur 2d, Searches and Seizures §§ 84–88.
   Search and seizure: observations of objects in "plain view"—su-
   preme court cases. 29 L Ed 2d 1067.
[4] 29 Am Jur 2d, Evidence §§ 249, 251–257, 267.
[5] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[6] 29 Am Jur 2d, Evidence § 179.
[7, 10] 21 Am Jur 2d, Criminal Law § 503 et seq.
[8] 40 Am Jur 2d, Homicide § 507.
[9] 75 Am Jur 2d, Trial §§ 91–119.

tion for the trial judge; an appellate court should refrain from disturbing such determination absent a clear abuse of discretion.

5. CRIMINAL LAW—EVIDENCE—IDENTIFICATION—INDEPENDENT BASIS —SUGGESTIVENESS.

An in-court identification which had a basis independent of an allegedly impermissibly suggestive pre-custody photographic showup was properly admitted in evidence.

6. WITNESSES—CRIMINAL LAW—EXPERT WITNESSES—BALLISTICS TESTIMONY—DESTRUCTION OF EVIDENCE—RIGHT OF CROSS-EXAMINATION.

The nonproduction of physical evidence which is the subject matter of testimony given by a government expert witness is not in itself a denial of a defendant's right to confront witnesses; the admissibility of expert testimony on ballistics test results was not affected by the accidental destruction of the slugs involved where the government's expert was available for cross-examination and defendant was given the opportunity to probe the authenticity and accuracy of the sources relied upon by the expert.

7. CRIMINAL LAW—MOTIONS—PLEA OF GUILTY—WITHDRAWAL OF PLEA—REHEARINGS.

A trial judge is not required to conduct a second hearing relitigating matters which have been properly ruled on by the examining magistrate.

8. HOMICIDE—INSTRUCTIONS TO JURY—AIDING AND ABETTING—EVIDENCE—FELONY MURDER.

There was no error in reading the aiding and abetting statute to a jury in a murder trial in which the prosecution has asserted that the defendant himself committed the homicide where evidence was admitted at trial tending to prove a joint commission of first-degree murder.

9. SENTENCING—JUDICIAL OBSERVATIONS—FELONY MURDER—HOMICIDE—PREJUDICE.

There was no prejudice to a defendant in a trial judge's observation at sentencing that the defendant, who was found guilty of second-degree murder perpetrated during a robbery, was probably also guilty of first-degree murder in the death of a second person killed in the same robbery.

10. CRIMINAL LAW—PLEA OF GUILTY—WITHDRAWAL OF PLEA—SUBSE-
QUENT CHARGES—HARSHER SENTENCES—REASONING—RECORD.

> The rule which forbids charging a defendant with a higher
> offense upon the vacation of a plea-based conviction does not
> proscribe the imposition of a harsher sentence upon conviction
> provided that sentence is authorized by law and the judge's
> reasons for so doing are not vindictive and are based upon
> objective information concerning identifiable conduct of the
> defendant occurring after the original sentencing proceedings
> as affirmatively stated on the record.

Appeal from Recorder's Court of Detroit, John
Murphy, J. Submitted February 5, 1976, at De-
troit. (Docket No. 20352.) Decided April 26, 1976.
Leave to appeal denied, 397 Mich 842.

Joseph L. Triplett was convicted, on his plea of
guilty, of second-degree murder. Plea vacated and
motion for new trial granted. Motion to reduce the
charge from first- to second-degree murder denied.
Defendant appealed. Reversed and remanded for
trial on the reduced charge. Defendant was con-
victed of second-degree murder. Defendant ap-
peals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, and *Patricia J. Boyle,* Prin-
cipal Attorney, Research, Training and Appeals,
for the people.

*James R. Neuhard,* State Appellate Defender,
for defendant.

Before: BASHARA, P. J., and N. J. KAUFMAN and
D. F. WALSH, JJ.

D. F. WALSH, J. Defendant was originally
charged with the first-degree murder, MCLA
750.316; MSA 28.548, of Ulysses Thornton. The
victim, a store guard, was one of three fatalities
resulting from a shooting affray which took place

during the attempted holdup of a neighborhood grocery store in Detroit on July 30, 1971. On December 15, 1971, Recorder's Court Judge Henry Heading accepted the defendant's plea to second-degree murder, MCLA 750.317; MSA 28.549. He was thereafter sentenced to a term in prison of from 45 to 60 years.

On May 22, 1972, Judge Heading vacated that plea and granted defendant's motion for new trial because the defendant had been insufficiently advised of his constitutional rights during the plea taking. See *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972). Defendant's motion for a reduction in the charge to second-degree murder was denied by Recorder's Court Judge John Murphy. On appeal to this court, however, an unpublished order was entered pursuant to *People v McMiller*, 389 Mich 425; 208 NW2d 451 (1973), remanding the case for trial on the reduced charge.[1] On February 7, 1974, a jury found defendant guilty of second-degree murder and thereafter defendant was sentenced to life imprisonment. He now appeals as of right raising several issues relating to the conduct of the trial.

I.

On the second day of trial the defendant requested that a new preliminary examination be conducted on the ground that he had just recently learned that the information had been amended to reflect the reduced charge of second-degree murder. The information had previously charged first-degree murder.

We uphold the trial court's denial of that re-

[1] *People v Triplett*, unpublished order, docket no. 15793, July 23, 1973.

quest inasmuch as defendant himself had actively sought the reduction in charge prior to trial, and in fact the record reflects a waiver of any objection to the proposed amendment at the very beginning of trial. Moreover, even without the amendment, a charge of first degree murder ipso facto apprises the accused that he must defend against the lesser included offense as well. See *People v Paul,* 395 Mich 444; 236 NW2d 486 (1975).

## II.

A suppression hearing was held on December 14 and 15, 1971, to determine the admissibility of testimony relating to a revolver seized by police officers at the time of defendant's arrest. Defendant contends that this testimony was improperly admitted at trial because the weapon itself was the product of an illegal search and there was no showing that defendant was "connected" with the revolver.

On the evening of August 8, 1971, the automobile in which defendant was a passenger was stopped by two patrolmen for a traffic violation—specifically, excessive smoke and noise, for which a citation was later issued. Officer Godor testified at a suppression hearing held December 14 and 15, 1971, that as he approached the passenger's side of the automobile he looked inside and saw a portion of a revolver protruding from the arm rest between defendant and the driver. The defendant was immediately arrested.

From these and other facts adduced at the hearing the trial judge determined the existence of probable cause justifying seizure of the revolver. It is our responsibility to preserve that finding unless we are convinced from a review of the record that the trial court's conclusion was clearly erroneous.

*People v Bunker,* 22 Mich App 396, 404; 177
NW2d 644 (1970), see also *People v Smith,* 19 Mich
App 359, 367–368; 172 NW2d 902 (1969). We are
not so persuaded in the instant case. It is well
settled that "seizure of objects within the plain
view of an officer, lawfully in a place where he had
a right to be, are not proscribed by the Constitu-
tion". *People v Whalen,* 390 Mich 672, 677; 213
NW2d 116 (1973), *People v Kuntze,* 371 Mich 419;
124 NW2d 269 (1963). There was sufficient evi-
dence in the instant case to support a finding that
(1) officer Godor had a right to be positioned at the
side of the automobile in which defendant was
riding, having lawfully stopped the driver of the
car for a traffic violation, and (2) that the weapon
seized was at least partially in plain view. There-
fore there was no search for purposes of Fourth
Amendment analysis, US Const Am IV; Const
1963, art 1, § 11. *People v Kuntze, supra,* 425–426,
*People v Whalen, supra,* 677.

The second argument concerning the admission
of gun-related testimony[2] is that the weapon itself
was irrelevant because of a lack of evidence "con-
necting" him to the seized revolver. Determination
of the relevancy of profferred evidence is commit-
ted to the discretion of the trial judge; an appel-
late court should refrain from disturbing such
rulings absent a finding of clear abuse of discre-
tion. *People v Howard,* 391 Mich 597, 603; 218
NW2d 20 (1974). We find no clear abuse of discre-
tion in the instant case. The testimony relating to
the weapon was manifestly relevant because ex-
pert testimony was introduced which tended to
prove that the gun found within arm's reach of

---

[2] The people's ballistics experts were permitted at trial to testify
that the slugs extracted from the victim Thornton's body were fired
from the .32-caliber revolver seized from the automobile in which
defendant was riding on the evening of his arrest.

the defendant at the time of his arrest was *the* weapon used during the commission of the crime. This is a classic demonstration of relevancy. See McCormick, Evidence (2d ed), § 185, pp 434–441.

## III.

### *The admission of identification testimony*

Two eyewitnesses, store employees Phillip Pye and his aunt Mary Jo Reese, were permitted to identify the defendant at trial as one of the perpetrators of the attempted robbery. With regard to Phillip's testimony, the defendant argues that his in-court identification was the product of an impermissibly suggestive pre-custody photographic show up. See *Simmons v United States,* 390 US 377; 88 S Ct 967; 19 L Ed 2d 1247 (1968), *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).

However, regardless of the alleged suggestiveness of the procedure used, we find that Phillip's in-court identification was independently established. See *People v McClow,* 40 Mich App 185; 198 NW2d 707 (1972). Phillip testified that several hours before the attempteu robbery he had seen the defendant enter a tavern with his accomplice Jordan. When Triplett and Jordan appeared later that evening, Phillip indicated that the store was well lit and that he had a second opportunity to see defendant's face.

The in-court identification by witness Mary Jo Reese is challenged for similar reasons. However, appellate counsel has failed to describe sufficiently any error alleged to have occurred in the pretrial identification procedure with respect to this witness. Furthermore, the argument for an independently established familiarity with the defendant's features is even stronger in this instance. Mary Jo

was at the cash register just before closing time when defendant and his accomplice entered the store. The pair were the only nonemployees in the store. Ms. Reese testified that Triplett stood right in front of her for a short period of time, perhaps a couple of minutes, and she remembered speaking to him. There was no error in allowing Ms. Reese to identify the defendant at trial.

## IV.

### Admission of ballistics testimony

At trial the people's ballistics expert was permitted to offer testimony, over defendant's objection, tending to show that the two bullet slugs recovered from the victim's body had been fired from a .32-caliber H & R revolver. The weapon tested in support of this opinion was that seized from the automobile in which defendant was a passenger on the evening of his arrest. Neither the revolver nor the slugs were available at trial since these items had been inadvertently destroyed by the Detroit Police Department. There is absolutely no proof that the destruction of this evidence was an act of deliberate suppression.[3] A police officer in charge of the property section testified that the revolver was being held for a carrying a concealed weapon (CCW) charge pending against Triplett but dismissed in April 1972. The revolver was ordered destroyed on June 7, 1972, inasmuch as the CCW file jacket failed to indicate that a homicide charge was still pending.

---

[3] The suppression of evidence, as it has been variously defined, is not at issue in this case. *See, e.g., People v Miller,* 51 Mich App 117, 120; 214 NW2d 566 (1974). *See also, People v Bendix,* 58 Mich App 276; 227 NW2d 316 (1975), Anno: *Withholding or Suppression of Evidence by Prosecution in Criminal Case as Vitiating Conviction,* 34 ALR3d 16, *Brady v Maryland,* 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

A similar error occurred in the homicide section because the property officer there had not been advised that a new trial had been ordered on May 22, 1972. Acting upon the information available to him, *viz.,* that Triplett had pled guilty to second-degree murder in December 1971, the officer ordered the two bullet slugs destroyed on December 30, 1972.

It is forcefully argued by defendant that he was denied the right "to be confronted with the witnesses against him", US Const, Am VI, Const 1963, art 1, § 20, because the physical evidence which formed the subject matter of a government expert witness's testimony was unavailable at trial. The fact that defense counsel was able to cross-examine the expert, urges the defendant, was not enough to satisfy the demands of the Sixth Amendment.

The primary goal of the confrontation clause was to prevent the use of *ex parte* affidavits or depositions against the accused in lieu of personal examination and cross-examination of witnesses in the presence of the trier of fact. *Mattox v United States,* 156 US 237, 242–243; 15 S Ct 337, 339; 39 L Ed 409, 411 (1895), *California v Green,* 399 US 149, 156; 90 S Ct 1930; 26 L Ed 2d 489, 496 (1970). However, the essence of the confrontation guarantee is "the right of the accused to confront and probe each of his accusers—a narrow adversary activity".[4]

---

[4] The Supreme Court, 1969 Term, 84 Harv L Rev 108, 112 (1970), quoted in *US v Williams,* 447 F2d 1285, 1289 (CA 5, 1971) *cert den,* 405 US 954; 92 S Ct 1168; 31 L Ed 2d 231 (1971), *reh den* 405 US 1048; 92 S Ct 1308; 31 L Ed 2d 591 (1972). *See also, People v Eddington,* 53 Mich App 200, 202–205; 218 NW2d 831 (1974). *And see* the concurring opinion of Justice Harlan who would extend the right of confrontation "no farther than to require the prosecution to *produce* any *available* witness whose declarations it seeks to use in a criminal trial". *California v Green, supra,* 506. (Emphasis in original.)

It is because this right is not without limitation that the nonproduction of physical evidence which is the subject matter of testimony given by a government expert witness is not in itself a denial of the right to confront witnesses. A panel of this court so held in *People v Eddington,* 53 Mich App 200; 218 NW2d 831 (1974), which relied on *California v Green, supra,* and cited Federal authority we find to be persuasive. *United States v Sewar,* 468 F2d 236 (CA 9, 1972), for example, involved the admission of blood test results where a lab technician had inadvertently destroyed a blood sample. The admissibility of the test results was not affected by the fact that the sample was unavailable to defense experts since the government's expert was available for cross-examination.

For identical reasons the Fifth Circuit upheld the admission of nitrate tests directly connecting defendant to a bombing incident. The testing procedure in *United States v Love,* 482 F2d 213 (CA 5, 1973), *cert den (sum nom, Oglesby v United States),* 414 US 1026; 94 S Ct 453; 38 L Ed 2d 318 (1973), involved the swabbing of defendant's hands with an acetone solution and subsequent chemical analysis of the acetone swabs. Exclusion of the test results was sought because neither a defense expert nor counsel was present when the tests were conducted and further because the material on the acetone swabs had been consumed in the testing process. Since the government's witness was himself available for cross-examination, the court found no infringement of the right to confront witnesses. See also *United States v Williams,* 447 F2d 1285 (CA 5, 1971) *cert den,* 405 US 954; 92 S Ct 1168; 31 L Ed 2d 231 (1971).

In the case before us there is no claim that defense counsel was prevented from questioning

the government expert as to the methodology of the ballistics test which formed the basis of his opinion. Of course the defendant was unable to appoint his own expert to perform similar tests, but we note that the defendant in *United States v Love* was similarly handicapped. Here the government expert was available and the defendant was given the opportunity to "probe the authenticity and accuracy of the sources relied upon" by the expert. *United States v Williams, supra,* 1289. Therefore the rights secured by the provisions of the confrontation clause have been satisfied in accordance with the applicable law.

## V.

### *Relitigation of the suppression hearing*

This case was finally set for trial on the lesser charge of second-degree murder before Recorder's Court Judge John R. Murphy on February 4, 1974. On that date the trial judge acknowledged that Judge Heading had, prior to the entry of defendant's initial guilty plea in December of 1971, denied certain defense motions to suppress testimony relating to the revolver and certain identification testimony.

Although the trial judge's reliance on *People v Paille #1,* 383 Mich 605; 178 NW2d 469 (1970), was technically misplaced in light of the limitation imposed on that case by *People v Cason,* 387 Mich 586, 595; 198 NW2d 292 (1972), certainly it is true that a trial judge is not required to conduct a second hearing relitigating matters which have been ruled on by the examining magistrate. Denial of a defendant's motion to suppress on this ground is a matter within the discretion of the trial court.

## VI.

The defendant argues that certain remarks and alleged misstatements made by the prosecutor during his closing argument effectively denied him the right to a fair trial. We have considered these remarks, reviewed the argument and find no prejudicial error.

## VII.

### *The aiding and abetting instruction*

The defendant further claims a denial of his right to a fair trial because of several jury instructions either given or requested and not given and because of certain remarks made by the trial judge during his final charge to the jury. Only one of these alleged errors merits discussion. The defendant asserts that since it was the theory of the prosecution that defendant *himself* committed the homicide of the store guard it was reversible error for the trial judge to read to the jury the aiding and abetting statute.[5]

It is true, as defendant points out, that a trial judge may commit reversible error when he gives an instruction unwarranted by the evidence at trial. *People v Ware,* 12 Mich App 512, 516; 163 NW2d 250 (1968), *People v Parks,* 57 Mich App 738, 742–745; 226 NW2d 710 (1975). But since in the instant case there was evidence tending to prove the joint commission of first-degree murder there was no error in reading the aiding and

[5] MCLA 767.39; MSA 28.979 provides that:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

abetting statute to the jury. *People v Mann,* 395 Mich 472, 477–478; 236 NW2d 509 (1975), *People v Marshall,* 53 Mich App 181, 184–186; 218 NW2d 847 (1974).

## VIII.

*Sentencing*

The defendant finally contends that his sentence must be vacated for two reasons: (1) The trial judge assumed his guilt of an uncharged first-degree murder; and (2) *People v McMiller*[6] forbids the imposition of a sentence greater than the one previously imposed pursuant to a vacated plea-based conviction.

At sentencing the trial judge stated his belief that the defendant was "probably guilty" of the felony murder of one of the other individuals shot and killed during the attempted hold up:

"You're right in not expecting any leniency. You were charged with First Degree Murder. I heard the facts in this case and in my mind it certainly was a Murder in the First Degree. It was a Murder perpetrated in the course of a Robbery. Not only Mr. Thornton was killed but the lady who owned the store, Sally Pye, was killed and the other one, the other robber was killed in the course of that Robbery. *You are probably guilty of at least two First Degree Murders, the murder of Sally Pye, which was committed in the course of the Robbery and the murder of Mr. Thornton.*"

We fail to discern any prejudice inuring to defendant on the basis of the trial judge's rather candid observation. It is assumed that the trial judge was familiar with and understood the legal

[6] 389 Mich 425; 208 NW2d 451 (1973), *cert den,* 414 US 1080; 94 S Ct 599; 38 L Ed 2d 486 (1973).

implications of the felony murder statute.[7] He had heard all of the facts in this case. He properly made the observation that the murder of which defendant stood convicted was perpetrated in the course of a robbery. He made the further observation that defendant was "probably" guilty of the murder of the other person killed in the same robbery. This case is distinguishable from *People v Grimmett,* 388 Mich 590, 607–608; 202 NW2d 278 (1972), in which the defendant was convicted of assault and the judge stated that he was certainly also guilty of murder.

Answering the second prong of defendant's argument we hold that the *McMiller* rule forbids only the charging of a higher offense upon the vacation of a plea-based conviction and does not proscribe the imposition of a harsher sentence on the lesser charge provided that sentence is authorized by law.

However, if a trial judge does impose a more severe sentence, his reasons for doing so must not be vindictive and must be stated affirmatively on the record. Moreover those reasons "must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceedings". *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

Since the *Pearce* rule was not followed in this

[7] MCLA 750.316; MSA 28.548.

"Sec. 316. FIRST DEGREE MURDER—All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder in the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life."

case we must remand to the trial court for resentencing.

Accordingly, the case is remanded for resentencing.