PEOPLE v EALEY

Docket No. 44774. Submitted June 2, 1980, at Detroit.—Decided December 3, 1980.

Willie M. Ealey was convicted of armed robbery, Wayne Circuit Court, Peter B. Spivak, J. Defendant appeals, alleging that admission into evidence of the results of a photographic identification conducted while the defendant was in custody was error. *Held:*

1. The use of photographs for identification when an accused is in custody is justified only in certain limited circumstances. In this case the police indicated that a proper lineup could not be conducted because of a shortage of prisoners with the defendant's characteristics and a shortage of available police officers because of a holiday. These reasons are not sufficient to justify the use of the photographic identification in the circumstances of this case, and the defendant's motion to suppress the identification evidence should have been granted.

2. Reversal is not required, however, because the victims subsequently identified the defendant at trial. There is no record of an evidentiary hearing on the issue of whether the in-court identification had a basis independent from the photographic identifications. The case should be remanded for such a hearing.

Remanded.

BRONSON, J., dissented. He would hold that in this case, where the defendant was represented by counsel at the time of the photographic identification, the defendant's burden of showing that the photographic identification procedure was improper was not met. The evidence could justify the conclusion

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 797.
[2, 3] 29 Am Jur 2d, Evidence § 785 *et seq.*
[3] 29 Am Jur 2d, Evidence § 367.
  Admissibility of evidence of photographic identification as affected by allegedly suggestive identification procedure. 39 ALR3d 1000.
[4] 4 Am Jur 2d, Appeal and Error § 515 *et seq.*
[5] 29 Am Jur 2d, Evidence § 148.

that the police were not able to conduct a proper lineup at the time. Judge BRONSON would affirm.

OPINION OF THE COURT

1. APPEAL — EVIDENCE — SUPPRESSION HEARING — CRIMINAL LAW.
   An appellate court should refrain from overturning the ruling of a lower court at a hearing on the suppression of evidence unless the lower court's ruling is clearly erroneous.

2. CRIMINAL LAW — IDENTIFICATION — PHOTOGRAPHIC IDENTIFICATION.
   The use of photographs for identification where an accused is in custody may be justified where: 1) it is not possible to arrange a proper lineup, 2) an insufficient number of persons are available who have the accused's physical characteristics, 3) the nature of the case requires immediate identification, 4) the witnesses are at a place far distant from the location of the in-custody accused, or 5) the accused refuses to participate in a lineup and by his actions would seek to destroy the value of the identification.

3. CRIMINAL LAW — IDENTIFICATION — IN-COURT IDENTIFICATION — INDEPENDENT BASIS.
   The factors to be considered in deciding whether a witness's in-court identification of a defendant has a basis independent of a prior photographic identification are: 1) the witness's prior relationship or knowledge of the defendant, 2) the witness's opportunity to observe the offense, 3) the length of time between the offense and the disputed identification, 4) comparison of the pre-lineup description and defendant's actual description, 5) any previous proper identification or failure to identify the defendant, 6) the witness's physical and psychological state, and 7) the defendant's distinctive characteristics.

4. CRIMINAL LAW — IDENTIFICATION — IN-COURT IDENTIFICATION — INDEPENDENT BASIS.
   A trial court must state on the record the reasons for determining whether or not the prosecution has established by clear and convincing evidence that an in-court identification of an accused had a sufficient independent basis to purge the taint of a prior improper photographic showup.

DISSENT BY BRONSON, J.

5. CRIMINAL LAW — IDENTIFICATION — BURDEN OF PROOF.
   *The burden of proof is on a defendant to establish the impermissi-*

bility of a lineup procedure, including a photographic showup, where counsel was present during the procedure.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Thomas J. Galvin,* for defendant on appeal.

Before: R. M. MAHER, P.J., and BRONSON and T. C. QUINN,* JJ.

PER CURIAM. Defendant was convicted by a Wayne County Circuit Court jury of two counts of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to concurrent prison terms of 3 to 10 years, with credit given for 177 days. Defendant appeals as of right.

The trial testimony indicates that on December 30, 1977, at approximately 9:30 p.m. Richard Tweedy was visiting Brenda West at her home in Inkster, Michigan, when they heard a knock on the back door. Tweedy answered the door, whereupon someone flung it open and a man entered. The man had something resembling a gun in his hand. The kitchen was dark, and Tweedy had only a glimpse of the intruder. The man told Tweedy to go into the living room and lie face down on the floor. The living room was lit by a single pole lamp.

The intruder gave Ms. West an extension cord and ordered her to tie up Mr. Tweedy, which she did. The man took two rings and a wristwatch from Ms. West and then tied her hands with an

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

extension cord as she sat on the couch. He then took a watch and a wallet from Tweedy. The man closed the living room drapes and tried to disconnect the television antenna. The man then went to the kitchen to look for a garbage bag. He returned to the living room and looked out the front window, then turned and ran out the back door.

West and Tweedy ran out the front door and saw two police cars which happened to be parked on the street in front of the house. The complainants told the policemen that they had been robbed and the robber had just fled through the back door. Without waiting for a description, the police cars gave chase. One of the cars turned onto Stanford, the next street over, and the officer observed a man walking about four to six houses from the corner. The man looked over his shoulder and began running, then threw something as he ran. The policeman chased him and apprehended him. The officer found Ms. West's rings on defendant's person, and recovered Tweedy's wallet where defendant threw it. After defendant was conveyed to the station, the officer searched the back seat of the police car and found both Tweedy's watch and West's watch.

The defendant claimed that he had been visiting a friend who lived in the area, where they had been playing cards and watching a basketball game on television. The defendant left to go to a liquor store. As he was walking down Stanford, he was stopped and arrested.

On December 31, 1977, the morning following the alleged robbery, West and Tweedy were called to the Inkster police station in order to view some photographs. An attorney was present while the photographic showup was conducted. The defendant was incarcerated in the Inkster City Jail at

the time. The showup consisted of eight polaroid pictures of black males. Ms. West examined the photographs first, and identified one of them, which was not of the defendant. Tweedy then looked at the photographs and identified defendant's picture. Ms. West was then given another opportunity to look through the pictures, and identified defendant the second time. Ms. West stated she was positive she picked out the correct photograph the second time. Both West and Tweedy identified the defendant as the intruder at the trial.

Sgt. Voetsch, the officer in charge at the police station, gave the following explanation for the use of a photographic showup rather than a corporeal lineup: There were only two or three other prisoners who fit defendant's race and physical characteristics, and due to the New Year's Eve holiday, the department was "shorthanded" and the Wayne County Prosecutor's office was conducting limited hours, so fast action was required in order to obtain a warrant.

Defense counsel made a pretrial motion to suppress the photographic identification evidence. Subsequent to a hearing, the trial court denied the motion.

On appeal, the defendant contends that the trial court erred reversibly by admitting into evidence the improper photographic identification which was conducted while defendant was already in custody, thus depriving him of a fair trial.

An appellate court will refrain from overturning a lower court's ruling at a suppression hearing unless that ruling was "clearly erroneous". *People v Dunlap,* 82 Mich App 171, 173; 266 NW2d 637 (1978), *People v Triplett,* 68 Mich App 531, 535; 243 NW2d 665 (1976).

In *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), the Michigan Supreme Court wrote a lengthy and scholarly opinion considering the uses and hazards of a photographic identification procedure. The Court announced that photographic identification should not be used where the accused is in custody unless there are exceptional circumstances, and that where a photographic identification is necessary, defendant has the right to have counsel present. In footnote 22, the Court enumerated the following situations where use of photographs may be justified:

"1. It is not possible to arrange a proper lineup.

"2. There are insufficient number of persons available with defendant's physical characteristics.

"3. The nature of the case requires *immediate* identification.

"4. The witnesses are at a place far distant from the location of the in-custody accused.

"5. The subject refuses to participate in a lineup and by his actions would seek to destroy the value of the identification." *Id.,* 186-187.

We do not find that exceptional circumstances were present in the instant case to justify the use of the photographic showup. Sgt. Voetsch admitted that there were "two or three" other prisoners suitable for a lineup. While the department may have been "shorthanded" due to the holiday, there is no indication that several off-duty officers could not have been contacted to participate at a lineup. Furthermore, Voetsch admitted that the Inkster Police Department had in the past cooperated with neighboring communities in arranging lineups, but apparently there was no attempt made to do so in the instant case. Finally, there were no special circumstances in this case which required immedi-

ate identification of the defendant. We distinguish these circumstances from those in *Anderson, supra,* where the victim was critically injured and there was doubt whether she would survive long enough to make a corporeal lineup possible. The arraignment herein could properly have been delayed for a reasonable time in order to arrange a corporeal lineup.

We therefore conclude that the rule in *Anderson* was violated, and the trial court erred in denying defendant's motion to suppress the improper photographic identification.

We decline to reverse defendant's conviction on this basis, however, since the subsequent in-court identification by the witnesses may have had a sufficiently independent basis to uphold the conviction. In *People v Kachar,* 400 Mich 78, 95-97; 252 NW2d 807 (1977), the Supreme Court listed the factors which should be considered in deciding whether an independent basis existed. These factors include: a prior relationship with or knowledge of the defendant; the victim's opportunity to observe the offense; the length of time between the offense and the disputed identification; comparison of the pre-lineup description and defendant's actual description; any previous proper identification or failure to identify the defendant; the victim's physical and psychological state; and defendant's distinctive characteristics.

The record herein is devoid of an evidentiary hearing on the issue of independent basis. We therefore remand the case for an appropriate hearing. The trial court must state on the record the reasons for determining whether the prosecution has established by clear and convincing evidence that the in-court identification had a sufficient independent basis to purge the taint of the im-

proper photographic showup. *Kachar, supra,* 400 Mich at 97, *People v Hill,* 84 Mich App 90, 93; 269 NW2d 492 (1978). If there was an independent basis, defendant's conviction is to be affirmed. If there is no independent basis, defendant will be entitled to reversal and a new trial, where identification evidence would be excluded. *Kachar, supra,* 100.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

BRONSON, J. *(dissenting).* Although a close question, I respectfully dissent from my brethren's opinion that the photographic identification procedure employed in this case was improper.

In the instant case, defendant was represented by counsel at the time of the photographic identification. This Court has held that where a lineup is attacked as defective, if counsel was present during the procedure, the burden of proof is on the defendant to establish the impermissibility of the identification process utilized. *People v Curtis,* 34 Mich App 616, 617; 192 NW2d 10 (1971), *People v Morton,* 77 Mich App 240, 244; 258 NW2d 193 (1977). In my opinion, this same rule applies where defendant argues that a photographic identification was improper. See, *People v Herndon,* 98 Mich App 668; 296 NW2d 333 (1980). This rule, coupled with the principle that an appellate court will refrain from overturning a lower court's ruling at a suppression hearing unless "clearly erroneous", convinces me that defendant's conviction should be affirmed.

In my opinion, the evidence presented at the suppression hearing could justify the conclusion that an insufficient number of persons with defendant's physical characteristics were available for a corporeal lineup. *People v Anderson,* 389 Mich

155, 186, fn 22; 205 NW2d 461 (1973). It is true that the officer in charge of the case, Sergeant Voetsch, stated that three other black males were also in the Inkster City Jail at the time of the photographic identification procedure. However, my reading of the record is contrary to the majority's in that I find nothing suggesting that these black males' physical characteristics were sufficiently similar to defendant's to warrant their inclusion in a lineup.

I also disagree with the majority concerning the extent of the Inkster Police Department's duty to attempt to obtain sufficient subjects to conduct a corporeal lineup. As the majority notes, Sergeant Voetsch admitted that the Inkster police had cooperated with neighboring communities in the past to obtain subjects for a lineup. He also stated, however, that such cooperative efforts had only taken place on a few rare occasions. I know of no case law mandating inter-agency cooperation in arranging lineups. Furthermore, considering that the identification procedure had to be set up the day before the New Year—when county police departments were shorthanded due to the holidays —it strikes me as unreasonable to expect time-consuming, and likely futile, efforts to be made by the understaffed Inkster Police Department.

As to the availability of off-duty officers who might have served as lineup participants, the record does not reveal that there was any reasonable likelihood that subjects could have been derived from the black police with the Inkster Police Department. The fact that the lineup was to be conducted during the height of the winter festivities when many officers were on vacation should be borne in mind when assessing what attempts to secure subjects were legally required.

I would affirm.